## THE STATE V. MARTIN RUTH.

1. INFORMATION; *Practice; Waiver.* A defect in the verification of an information is waived by pleading to the merits and going to trial. (*State v. Otey*, 7 Kas. 69.)

2. ———— *Evidence.* A certificate of an officer charged with the custody of public records that his records show a certain fact, is not, in the absence of express statute, competent evidence of the fact. There should be a certified copy of the records, that the court may see whether the records prove the fact. (*Bemis v. Becker*, 1 Kas. 226.)

3. ———— By statute, Ness county was attached to Pawnee county for judicial purposes until it should be organized. The law in reference to the organization of new counties provided that, after certain proceedings had been taken, the governor should appoint commissioners and clerk, and that the county should be organized from and after the qualification of these officers. On the trial of a party in the Pawnee county district court, charged with the commission of an offense in Ness county, it was objected that the district court of Pawnee county had no jurisdiction because of the place of the offense. No evidence was offered as to the organization of Ness county, and the court overruled the objection. *Held,* No error.

4. ———— *Quære.* Is there any constitutional inhibition on the attaching of one organized county to another within the same judicial district for judicial purposes?

5. RAPE; *Threats; Physical Resistance.* In order to constitute the crime of rape, it is not essential that the female shall make the utmost physical resistance of which she is capable. If in consequence of his threats and display of force she submit, through fear of death or great personal injury, the crime is complete.

*Appeal from Pawnee District Court.*

MARTIN RUTH was charged by information with having committed the crime of rape. The information stated "that on or about the 28th day of July, 1878, at the county of Ness and state of Kansas — the said Ness county being attached to the county of Pawnee for judicial purposes — one Martin Ruth, then and there being, did then and there unlawfully and feloniously commit a rape upon Ida F., a woman upwards of ten years of age, by forcibly and against her will, ravishing her, the said Ida F." Trial at the adjourned June Term, 1878, of the district court. The jury returned a verdict of guilty as charged in the information. Motions for a new trial and in arrest of judgment were overruled, and judgment was rendered upon the verdict. *Ruth* appeals to this court.

*N. B. Freeland,* county attorney, and *Willard Davis,* attorney general, and *H. B. Johnson,* for The State:

1. The district court of Pawnee county has jurisdiction of the case. The certificate of the secretary of state found in the record is secondary and hearsay evidence, and was properly excluded. By legislative action, (Laws 1874, ch. 67,) the county of Ness was attached to the county of Pawnee for judicial purposes. This act assumes that the county of Ness was, at the time of its adoption, unorganized; but even if it had been organized, the act would be valid. The constitution (art. 3, § 19) provides that new or unorganized counties shall by law be attached for judicial purposes to the most convenient judicial districts. This would authorize attaching to a particular county in the most convenient district; and the same power is given, in this regard, over a new though organized county, that is given over an unorganized county. And without reference to the constitution, the legislature has the power to attach one county (organized or unorganized) to another for judicial purposes.

2. The information was properly verified, but if not, there

being no demurrer, motion to quash, or plea in abatement, filed, and the defendant pleading not guilty and going to trial, the objection was waived. (*State v. Otey*, 7 Kas. 69.)

3. The law of the case was fairly presented by the charge of the court. The court declared that the force necessary to constitute the crime of rape might be mental or physical force, or both combined; and that if a person by threats or by placing the female in fear of death, violence or bodily harm, induces her to submit to his desires, and while under this influence ravishes her, this is as much a forcible ravishing as if a person by reason of his superior strength would hold a woman and forcibly ravish her. The weight of reason and authority is with the view of the court below. *Turner v. People*, 33 Mich. 363; *Commonwealth v. McDonald*, 110 Mass. 405; *Wright v. State*, 4 Humph. (Tenn.) 194; *People v. Dohring*, 59 N. Y. 374; *Regina v. Camplin*, 1 Cox C. C. 220; Roscoe's Cr. Ev. (6th Amer. ed.) 806; 1 East P. C. 444, § 7.

4. Is the verdict sustained by the evidence? Immediate complaint (such as was made in this case) is always a strong corroborating circumstance. (2 Bish. Crim. Proc., § 963.) The fact that the girl did not make an outcry which would have aroused the children is satisfactorily explained. (2 Bish. Crim. Proc., § 969.)

*Nelson Adams*, and *A. A. Hurd*, for appellant:

No proper information was filed in the cause, for the reason that the same was not verified. (Record, p. 4; Gen. Stat., § 67, ch. 82.) The court had no jurisdiction to try defendant. (Const., art. 3, §§ 14 and 19; Bill of Rights, § 10; record, p. 63.) The court erred in giving instructions, by charging in the disjunctive. (Gen. Stat., ch. 31, §§ 31, 33; record, pp. 23 and 24; Bishop's Cr. Proc., vol. 1, 333, *et seq.*) The court erred in instructing in regard to menace and duress. (Gen. Stat., ch. 31, § 33.)

The tenor of the court's instructions as a whole tended to mislead the jury, and was not authorized by law, and was so contradictory as to be almost unintelligible to any but a per-

son versed in the law. The court erred in refusing each and every instruction asked by defendant. (Record, pp. 37 and 38.) See authorities cited below: Fraud will not constitute rape. (*Walter v. People*, 50 Barb. 144; 1 Wheeler Crim. Cases, 378; 8 English, Ark., 360.) Connection procured by menace or duress, does not constitute rape. (Gen. Stat., ch. 31, §§ 31 and 33.) Force must be proved. (*Cato v. State*, 9 Fla. 163.) Utmost reluctance and resistance must be proved. (*State v. Burgdorf*, 53 Mo. 65; *People v. Morrison*, 1 Park. 625; 24 Mich. 1; *State v. Dohring*, 59 N. Y. 374.)

The verdict was contrary to the evidence, and we desire to call the attention of the court particularly to the evidence of complainant. (Record, p. 9; and also see, 53 Mo. 65.)

The rule in regard to setting aside verdict in criminal cases, for reason that it is contrary to or not supported by evidence, is different from rule in civil cases. Bishop Cr. Proc., vol. 1, §§ 847, 848; 10 Humph. (Tenn.) 144; and 7 Humph. 479, 544.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted in the district court of Pawnee county of the crime of rape, and from such conviction brings this appeal. Several questions are presented in the record. It is alleged that the information was insufficient for lack of a proper verification. The verification was defective, but the defect was waived by the defendant's pleading to the merits and going to trial. (*State v. Oley*, 7 Kas. 69.) The jurisdiction of the court was challenged. The prosecution was in the district court of Pawnee county, and the offense charged to have been committed in Ness county. By sec. 2, ch. 67, laws 1874, the county of Ness was, until organized, attached to Pawnee county for judicial purposes. On the trial a certificate of the secretary of state was offered for the purpose of showing that Ness county had been duly organized, but the district court rejected the testimony. We see no error in this ruling, for the certificate was simply a statement that the records of his office showed cer-

tain facts, as, " that Ness county was duly organized by proc-
lamation of the governor on the 23d day of October, 1873,"
and did not purport to furnish copies of any paper or record.
The paper was a certificate of a fact, and not a certified copy
of any paper of record, and that such a certificate is not, in
the absence of express direction of statute, competent evi-
dence, is clear. (*Bemis v. Becker*, 1 Kas. 226; *Owen v. Boyle*,
3 Shepl. 147; *English v. Sprague*, 33 Me. 440; 1 Greenl. on
Ev., §498, and cases cited in note.)

Will the court, in the absence of evidence, take judicial no-
tice of the date of the organization of new counties? Doubt-
less the court takes judicial notice of the fact that in the
eastern portion of the state there are counties duly organized,
and with all the machinery of the law and courts in full op-
eration, and that the western portion is composed of unor-
ganized territory; but whether it will take notice of the time
when any particular county passes from an unorganized to an
organized condition, is doubtful. Such passage dates not
from any proclamation from the governor, nor from any ac-
tion of the executive, but "from and after the qualification
of the officers appointed" by the governor. (Laws 1872,
p. 244, §1; Laws 1876, p. 159, §1.) And it can hardly be
that the court is to take judicial notice of the times at which
certain officers appointed in a county hitherto unorganized
take the oath of office and give their official bond. It would
seem that this is a question of fact, and a subject-matter of
proof. Doubtless when a district court is held in a county,
it will be presumed by this court that the county is so or-
ganized as to afford officers and other machinery for the hold-
ing of courts, and that the action of the district judge in
there holding court is warranted by the facts as he has found
them to exist; and this presumption can only be overthrown
by evidence proving the contrary. It is not necessary in
each case to prove that the county has in fact been organized.
Is not the converse of this proposition equally correct? The
question now before us is not whether this court, in an orig-
inal action, is to take judicial notice of the fact that a county

is regularly organized and courts held therein, but whether, when the district court is not held in such county, and the court of an adjoining county to which by express statute the county is attached for judicial purposes declines to recognize such county as organized, and continues to exercise the jurisdiction which it unquestionably once held, this court shall, in proceedings in error, take judicial notice of the fact that the officers had duly qualified, the county become regularly organized, and that the district court erred in not so recognizing the fact, and holding terms of court therein. See the case of *Wood v. Bartling*, 16 Kas. 109, on this question.

But is it true that the legislature has no power to attach one organized county to another for judicial purposes? The constitution provides (§ 5, art. 3) that "the state shall be divided into five judicial districts," and in § 18, same article, names the counties of which such districts were at first to consist. It is also provided in said § 5, that the "district courts should be held at such times and places as may be provided by law." It does not say that they shall be held in each county; and though by § 7, a clerk of the district court is to be elected in each organized county, is there any inhibition on the legislature's providing that the district court in each district be held at only one place in the district? Again, the number of districts may be increased by law, but it requires the concurrence of two-thirds of the members of each house; (§ 14, art. 3, Const.) And "*new or unorganized* counties shall by law be attached for judicial purposes to the most convenient judicial districts;" (§ 19.) Now, under that, may not the legislature attach a new though organized county for judicial purposes to any convenient district, or to any county in that district? Such certainly was the understanding of the legislature in the early history of the state; for the first state legislature attached Clay, Dickinson, Saline and Ottawa counties to the county of Davis; the counties of Washington, Republic and Shirley to the county of Marshall, and so on. (See Laws 1861, p. 123, § 1.) Some of these counties so attached were named in the constitution as

included in the five districts, and others were organized intermediate the sitting of the constitutional convention and the admission of the state. That such contingencies as the creation and organization of new counties were foreseen and provided for, the constitution itself discloses, and the power to provide for the administration of justice in them, without creating new districts, was expressly granted. And the bill of rights, as foreseeing the very question here presented, guarantees to an accused "a speedy public trial by an impartial jury of the county *or district* in which the offense is alleged to have been committed." (Bill of Rights, § 10.) But it is perhaps unnecessary to pursue this inquiry further. It does not seem to us that this court can hold that the district court erred in exercising jurisdiction of the case.

The law of the case was fairly presented by the charge of the court. The court declared that the force necessary to constitute the crime of rape might be mental or physical force, or both combined, and that if a person by threats, or by placing a female in fear of death, violence or bodily harm, induces her to submit to his desires, and while under this influence ravishes her, this is as much a forcible ravishing as if a person, by reason of his superior strength, would hold a woman and forcibly ravish her. We understand the court to simply mean that the act must be committed, either (1) by physical force against the will of the female, or (2) with her acquiescence procured by threats or violence. On the contrary, the court was asked to declare that the offense charged could not be committed, unless there was the utmost *reluctance* and the utmost *resistance* on the part of the female. The distinction between the two theories is broad and well defined. Under the former, acquiescence induced by mental terror and fear of violence, supersedes the necessity of physical resistance. Under the latter, there must be actual physical resistance. The female when assailed must persist, though she knows resistance will be vain; she must fight, though she may believe this course will bring upon her other and perhaps greater violence; she must cry aloud, though she knows no

relief is near; she must arouse her sleeping infant sisters to be witnesses to the outrage, though she knows they can render her no aid. Under the former the *force* may be either *actual* or *constructive*, while under the latter it must be *actual*. The weight of reason and authority is with the view of the court below. *Turner v. People*, 33 Mich. 363; *Commonwealth v. McDonald*, 110 Mass. 405; *Wright v. State*, 4 Humph. (Tenn.) 194; *People v. Dohring*, 59 N. Y. 374; *Regina v. Camplin*, 1 Cox C. C. 220; Roscoe's Cr. Ev. (6th Am. ed.) 806; 1 East. P. C. 444, § 7.

In Roscoe's Cr. Ev., *supra*, it is said: "It must appear that the offense was committed without the consent of the woman, but it is no excuse that she yielded at last to the violence, if her consent was forced from her by fear of death or by duress." In 2 Bishop's Crim. Law, § 1120, the author says: "Yet wherever there is a carnal connection without anything which can be deemed a consent, where there is neither a consent fraudulently procured nor any other sort of consent, by the woman, there is evidently in the wrongful act itself all the force which the law demands as an element of the crime." And again, in § 1125: "A consent induced by fear of personal violence is no consent, and though a man lays no hand on a woman, yet, if by an array of physical force he so overpowers her mind that she dares not resist, he is guilty of rape by having the unlawful intercourse." See also 2 Whar. Am. Crim. Law, § 1142; *Pleasant v. The State*, 8 Eng. (13 Ark.) 360. See also a late decision from Connecticut, reported in 19 Albany Law Journal, page 136, as follows:

"*Held*, also, that a refusal of the court to charge that to constitute the crime of rape, it was necessary that the female should have manifested the utmost reluctance, and should have made the utmost resistance, was not error. The importance of resistance is simply to show two elements in the crime — forcible carnal knowledge by the one party, and non-consent by the other. The jury must be satisfied of the existence of these two elements by the resistance of the complainant. If she had the use of her faculties and physical powers at the time, and was not prevented by terror or the exhibition of

brutal force, so far her resistance is important; but to make the crime hinge on the uttermost exertion the woman was physically capable of making, would be a reproach to the law and to common sense. The question is one of fact, and a jury must determine it." (*State v. Shields,* Conn. Sup. Ct. 1878 — opinion by Park, C. J.)

As to the questions of fact, we cannot say that the jury erred, or that the verdict was against the evidence. The case substantially hinged on the relative credibility of the prosecuting witness and the defendant. He admitted the intercourse, but claimed that it was voluntary on her part; she testified that there was a forcible ravishing. The corroborating testimony, which, however, was limited, tended to support the prosecuting witness. The jury believed her story, and the trial judge approved their verdict. We cannot say that it was wrong, and the judgment must be affirmed.

All the Justices concurring.