Ransbottom *v.* The State.

Filed March 6, 1896.

No. 17,695.

RANSBOTTOM *v.* THE STATE.

INSTRUCTIONS TO JURY.—*Special.—Delivery to Court Before Argument.*—A party who desires special instructions to be given by the court must deliver them to the court before the argument to the jury commences, and is not entitled to have any consideration given to his instructions offered later.

CRIMINAL LAW.—*Rape.—Resistance.*—Actual physical resistance is not essential to the crime of rape, where such resistance was prevented by fear produced by the defendant's threats.

SAME.—*Failure to Record Indictment.— Appeal.*— The failure to comply with section 1741, R. S. 1894, requiring indictments to be recorded, does not injure a defendant who is tried on the indictment that is actually returned by the grand jury.

EVIDENCE.—*Rape.—Resistance.*—In determining whether the resistance by the prosecutrix in a prosecution for rape was rendered less effective, or wholly averted by fear, the fact that she had but barely reached the age of consent, and was the only female in a lonely house, surrounded by a trio of strange young men, and had been brought there under false pretenses practiced on her mother and herself by defendant, are proper matters to be considered.

SAME.—*Presumption.—Affidavit for Continuance.*—No presumption can be indulged against the truth of the facts stated in an affidavit for a continuance, nor can any presumption be indulged in favor of such an affidavit, where it fails to state a necessary fact, or insufficiently states it.

CHANGE OF VENUE.—*From County.—In Discretion of Court.*—The refusal of a change of venue in a criminal case, on account of alleged prejudice and excitement in the county against the appellant, is within the sound discretion of the trial court, under section 1840, R. S. 1894, and will not be disturbed on appeal, in the absence of an abuse of such discretion.

Ransbottom *v.* The State.

CONTINUANCE.—*Absent Witness.*—*Subpœna.*—The statement in an affidavit for a continuance in a criminal trial, that defendant issued a subpœna to the sheriffs of certain counties, commanding each to summon a witness, does not show that he caused the proper officer to issue a proper subpœna *to each of the sheriffs mentioned, commanding them to summon the witness to appear in the court in which the trial is had,* to testify in the cause on his behalf.

SAME.—*Absent Witness.*—*Evidence.*—*Subpœna.*—An affidavit for a continuance, on the ground of the absence of a witness, is not required to show that the sheriff, in serving the subpœna, left the same at the residence of the witness, the latter not being found.

SAME.—*Absent Witness.*—*Same Facts in Personal Knowledge of Defendant.*—*Criminal Law.*—That an affidavit for a continuance in a criminal trial, on the ground of an absent witness, under section 1850, R. S. 1894, which requires a statement that defendant is unable to prove facts by any other witness whose testimony can be as readily procured, discloses that the facts proposed to be proved are within the personal knowledge of the defendant, is not a cause for the refusal of the continuance.

SAME.—*Absent Witness.*—*Affidavit.*—*Necessary Facts.*—*Subpœna.*— The statement in an affidavit for a continuance in a criminal trial, that defendant could not learn of the whereabouts of the absent witness in time to send a subpœna for him to the county where he is shown by the affidavit to be, is insufficient to establish such fact in the absence of a statement of the facts from which the conclusion was drawn.

From the Marshall Circuit Court.

*H. R. Robbins,* for appellant.

*W. A. Ketcham,* Attorney-General, for State.

McCABE, J.—The appellant was convicted in the Marshall Circuit Court of rape, alleged in the indictment to have been committed on one Esther Schroll on December 4, 1894.

Many errors are assigned, among which are the overruling of appellant's motion to quash the indictment, overruling appellant's motion for a new trial, overruling his motion for, and in arrest of, judgment. The only reason urged in argument in support

of the motion to quash and in arrest is that the record does not disclose that the indictment was recorded as required by section 1741, R. S. 1894, (R. S. 1881, section 1672). It was settled by this court in *Heath* v. *State*, 101 Ind. 512, that the failure to comply with such requirement does not injure a defendant who is, as was the case here, tried on the indictment that was actually returned by the grand jury. One of the reasons assigned for a new trial was the refusal of the appellant's application for a change of venue on account of alleged prejudice and excitement in the county against the appellant. The statute leaves such an application to the sound discretion of the trial court. R. S. 1894, section 1840 (R. S. 1881, section 1771). And unless it appears that such discretion was abused to the injury of the complaining party this court cannot interfere. *Walker* v. *State*, 136 Ind. 663, and authorities there cited. There was no error in either of these rulings.

The refusal to continue the cause on application of appellant is made one of the reasons for a new trial, as well as one of the specifications in the assignment of errors.

The continuance was asked on the ground of the absence of Charles Grenert.

There is and can be no question made, that the facts proposed to be proven by the absent witness are competent and material evidence for the appellant.

There are but two objections made to the affidavit in support of the court's ruling refusing the application to continue. The attorney-general contends that the affidavit is insufficient because it fails to show that the sheriff, in serving the subpoena, left the same at the residence of the witness, which residence was shown to be in Starke county, he being not found. No authority is cited by the attorney-general in support

of this proposition, nor do we know of any. That objection cannot be maintained. ·

It is urged by the attorney-general that appellant, being a competent witness, under section 1867, R. S. 1894, for himself, and the affidavit disclosing that the fact proposed to be proven by the absent witness was one which the appellant knew more about than the absent witness, or as much, at all events, his statement in his affidavit, required by section 1854, R. S. 1894, that the defendant "is unable to prove such facts by any other witness whose testimony can be as readily procured," is on its face untrue.

It is true, it does appear, from the affidavit, that appellant would necessarily know the facts proposed to be proven, as well, at least, as the absent witness, and the law makes appellant a competent witness in his own behalf.

It has been held by this court in a civil case that it is no cause for refusal of a continuance for an absent witness to a material fact that the same is known to the party himself, he being competent to testify to it. That he is not bound to resort to his own testimony, and is entitled to make his proof by disinterested and impartial witnesses. *Fox* v. *Reynolds*, 24 Ind. 46. We think that is a sound rule. And if it is so in a civil case, the reason is still stronger why it should be so in a criminal case. But going beyond the brief on behalf of the State, we are led to inquire whether the affidavit shows that the appellant exercised due diligence to secure the attendance of the witness. The affidavit as to diligence, after stating that the absent witness resides in Starke county, states "that on March 4, being the first day of this term of court, the defendant issued a subpoena to the sheriff of Marshall county, also to the sheriff of Starke county, Indiana, commanding each to summon Charles Grenert;

that each of said sheriffs made diligent search and inquiry, but that said Charles Grenert evades or eludes them so that a subpoena cannot be served; * * * that said witness resides in Starke county, Indiana, and * his family, to-wit: his brother, Geo. Grenert, said that said witness had a job of making stave bolts or cutting wood in Grant county, and would return by plowing time in April, being about April 10; that affiant could not learn of his whereabouts in time to send subpoena to Grant county, but affiant verily believes that Grenert will return about April 10, or shortly thereafter."

Courts of justice have more efficient means of inducing the attendance of witnesses who are within the State than waiting for plowing time to bring them back.

No presumption can be indulged against the truth of the facts stated in an affidavit for a continuance, however strongly the court may suspect them to be false. Neither can any presumption be indulged in favor of such affidavit where it fails to state a necessary fact or insufficiently states it. The statement in the affidavit that "the defendant issued a subpoena to the sheriff of Marshall county, Indiana, also to the sheriff of Starke county, Indiana, commanding each to summon Charles Grenert," is far from showing that appellant caused the proper officer to issue a proper subpoena to each of the sheriffs mentioned, commanding them to summon the witness to appear in the Marshall Circuit Court to testify in the cause on behalf of appellant. If the return of the subpoena had been stated, and it exhibited to the court, the defective statement might have been cured. But there is nothing of the kind shown. The bare statement that the defendant issued the subpoena is no better

than if the affidavit had stated that the clerk of the Starke Circuit Court had issued the subpoenas.

But that is not all. The affidavit shows that appellant was in possession of information that the absent witness was at that time in Grant county, Indiana, but it does not state when he received that information. It does state that he could not learn of his whereabouts in time to send a subpoena to Grant county. But that is not stating the facts concerning his diligence, but his conclusion from those facts. It was the exclusive province of the court to draw that conclusion, and his to state the facts. The court might, if he had stated the facts, draw an entirely different conclusion. Evidently fearing such a result, he has attempted to usurp the functions of the court and has stated his conclusion from the facts, namely, that appellant could not learn his whereabouts in time to send subpoena to Grant county, instead of stating the facts as to what he did and when he first learned that the witness was in Grant county, and allow the court to draw the conclusion as to whether there was time enough after he learned the whereabouts of the witness to send subpoena to Grant county. See *McDermott* v. *State*, 89 Ind. 187; *McKinsey* v. *McKee*, 109 Ind. 209.

Another ground specified in the motion for a new trial and urged as error, is the refusal to give certain instructions asked by the appellant. The record fails to show when the instructions were asked, whether before or after the trial. A party who desires special instructions to be given to the jury, must deliver them to the court before the argument to the jury commences, and is not entitled to have any consideration given to his instructions offered later. *Hege* v. *Newsom*, 96 Ind. 426; *Evansville, etc., R. R. Co.* v. *Crist*, 116 Ind. 446 (2 L. R. A. 450).

The presumption is that the court refused them because not requested in time, unless for the reason they had already been substantially given by the court in its instructions to the jury, which we think is clearly the case.

It is urged that the evidence does not support the verdict in that it fails to establish that the sexual connection was accomplished by force and against the will of the prosecutrix.

The testimony of the injured girl is to the effect that she was 14 years of age on August 28, 1894, and that she and some older sisters lived with their widowed mother in Knox, Starke county, Indiana, and that on December 4, 1894, appellant came to her mother's house and, representing himself as a Mr. Bottorff, living in the edge of Marshall county, applied to hire a girl to do housework for his wife, who, he represented, had a little child about two years old, but that his wife was not stout enough to take care of the child and do her work. The older sister present refused to go, and it was finally agreed that Esther should leave school and go with him, the family all believing him to be Mr. Bottorff and a married man, all of which turned out to be false. Esther's mother packed her clothing in a valise hastily, and she started with him, as they all supposed, to appellant's home in Marshall county. About 8 o'clock at night they reached the house of a man by the name of Morris, in the edge of Marshall county, but neither Morris nor his family were at home. But there were two young men there named Bill Sheperd and Charles Grenert standing outside of the house when appellant drove up with Esther in the wagon. Appellant told her his wife was away to her folks and would not be back till about midnight. The young men seemed to know appellant, and Esther had a slight knowledge of but one of

them.  Esther and appellant went into the house and
the two young men put away appellant's team.  There
was nobody else in the house.  After the team was
put up the two young men came back into the house.
After Esther had sat there some time, and answering
appellant's inquiry if she was sleepy, said she was,
he showed her into a bedroom and left the lamp in
her bedroom and he went back into the other room.
The other young men went up stairs to bed.  Appel-
lant went back into her bedroom, took the lamp out
to the other room, blew it out and came back into her
bedroom, called her three times, to which she made
no answer.  He then took off his clothes and got in
bed with Esther.  The sexual intercourse took place
in that bedroom.  The prosecutrix testifies that it
was against her will, that she made outcry, but that
by threats made by him to kill her if she did not keep
still, she was put in fear.

It was said in *Anderson* v. *State*, 104 Ind. 467, at page
474, "that it was incumbent upon the State to show
that the prosecuting witness had resisted with all
the means within her power.  *  *  The nature and
extent of the resistance which ought reasonably to
be expected in each particular case, must necessarily
depend very much upon the peculiar circumstances
attending it, and it is hence quite impracticable to
lay down any rule upon that subject applicable
to all cases involving the necessity of showing a
reasonable resistance."  Citing *Ledley* v. *State*, 4 Ind.
580; *Pomeroy* v. *State*, 94 Ind. 96  (s. c. 48 Am. R. 146);
*Commonwealth* v. *McDonald*, 110 Mass. 405;  2 Bish.
Crim. Law, section 1122.  And in *Huber* v. *State*, 126
Ind. 185, at page 186, it is said:  "Resistance or op-
position, by mere words is not enough; the resistance
must be by acts, and must be reasonably pro-

portionate to the strength and opportunities of the woman. Where, however, fear or violence overcomes resistance, a different rule applies." There was evidence from which the jury were justified in believing that resistance was prevented by fear produced by appellant's threats, taking into consideration, as they had a right to do, the circumstances of getting her to the lonely, strange house late in the darkness of the night, all unexpected to her, whereat she was the only female, surrounded by a trio of strange young men; and that she had been brought there under base false pretenses, practiced on her mother and herself by one of the trio, with circumstances pointing suspiciously at the other two as at least cognizant of the fraud, if not accomplices, she being but a mere child, inexperienced and ignorant of the true relation of the sexes, barely over the age fixed by law at which consent implied from non-resistance takes out of the act the deep, dark, felonious hue; these circumstances, together with her size, appearance, and her intelligence, were all proper matters to be considered in determining whether resistance on her part was rendered less effective or wholly averted by fear. The evidence was of such a character as to justify the jury in finding that it was. The case of *Eberhart* v. *State*, 134 Ind. 651, and numerous authorities there cited, are very much in point here and support the conclusion here reached.

We, therefore, cannot say that the evidence does not support the verdict.

Another ground on which it was urged a new trial ought to have been granted is that the trial court permitted the State to produce before the jury for their inspection the pair of drawers worn by the prosecutrix on the night when the alleged offense was committed, after the defendant had closed his evidence.

Ransbottom v. The State.

Such ruling was within the sound discretion of the court, upon which no reversible error can be predicated if the defendant is afforded an opportunity to meet such new evidence in chief. *Kahlenbeck* v. *State*, 119 Ind. 118. No complaint is made that such opportunity was not afforded.

It is contended that the verdict is vindictive and more the surrender to the voice of prejudice than to sound reasoning. If the verdict had been 21 years in the penitentiary we could not have disturbed it as being too severe.

It may be that the uncontradicted evidence created some prejudice in the minds of the jurors against the defendant.

But another jury would have to be made up of men. And how any twelve men could listen to such evidence as stands uncontradicted in this case without feeling some slight prejudice against the author of such a gigantic scheme of villainy it is difficult to understand. And yet the jury succeeded, under the wise directions of the learned judge who presided at the trial, in keeping that prejudice down so as to return a verdict of only a little over one-half the punishment they might have given the defendant. While it may seem severe to appellant, who seems to have thought very little about the law and more of himself, yet it may serve to teach him and others that the majesty of the law protects the weak and helpless as well as the strong.

Finding no available error in the record, the judgment is affirmed.

Filed March 6, 1896.