BOHLMANN, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 14 — March 1, 1898.*

*Rape: Resistance: Evidence.*

In a prosecution for rape committed upon a girl who, although but fifteen years of age, weighed 125 pounds and was well developed and accustomed to all kinds of work, by a man whose acquaintance she had made that night at a country dance and who was accompanying her to the place where she worked, the circumstances established by the evidence, taking the testimony of the girl as true, are *held* so inconsistent with that resistance to the best of her ability and accomplishment of the outrage against her will, necessary to make out the crime, that the jury were not warranted in saying that guilt was established beyond a reasonable doubt.

ERROR to review a judgment of the circuit court for Jefferson county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

The plaintiff in error, *Otto Bohlmann,* was convicted of the crime of rape.   The circumstances of the offense, according to the evidence of the prosecuting witness, were substantially as follows: Alvina Berg, a servant girl in the family of one Pugh, and a girl friend by the name of Dora Haubeck, about 12 o'clock at night, started to go home from a country dance.   *Bohlmann,* a man about twenty-seven years of age, who had become acquainted with the girls during the evening, without invitation or protest from them, started to accompany them home.   The three went along a highway some distance, and then across the fields to the house of Dora, on another highway.   *Bohlmann* and Alvina walked together, arm in arm, most of the way, and some of the way each with an arm around the other.   After the home of Dora was reached, she bade the others good night, and they proceeded on the highway towards the home of Pugh, which was about half a mile away.   After going a short distance *Bohlmann* kissed Alvina, and she told him she did not want his kisses, and pushed him away a little. He then threw her down and she screamed "Dear, dear!" He put his hand over her mouth and she tore off his necktie, and got away from him, and walked off fast.   He followed, and after going a short distance, and near the house of one Lewis, caught up with her, and the two then walked along together till nearly to Pugh's house.   *Bohlmann* then asked Alvina to go out on the side of the road to a grass plat by the road fence.   She refused and went the other way.   He then took hold of her and pulled her along over near the fence to the grass, then put his arm around and kissed her. She made no outcry or physical resistance to him in any way at that instant.   He then threw her down on the grass, and lifted up her clothes, and unbuttoned the clothing nearest her person.   Though her hands were free all the time,

she made no outcry, and no resistance at all, except that she kicked with her feet. She said she struggled all she could, but, when pressed to say what she did by way of struggling, said she kicked with her feet; that she was afraid he would kill her; that he said if she would not keep still she would know what he would do to her; that she asked him what he would do and he made no answer. The outrage there took place, no resistance being made other than as detailed. Her underclothes were not torn in any way and there were no marks of violence upon her person or upon his. She did not resist *Bohlmann* by the use of her hands at all, or by the making of any outcry, or in any manner except as before stated. She was a large, strong girl, fifteen years of age, weighed 125 pounds, and was accustomed to work in and out of doors. After the alleged offense was committed the two got to their feet and the girl went on a distance of about a block to Pugh's, and *Bohlmann* turned back. The corroborating evidence is to the effect that the girl's clothes were soiled with dirt, and there were some spots on her underclothing, and the next day she complained to her mother of the treatment she had received.

*R. B. Kirkland,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General,* and oral argument by *C. E. Whelan,* second assistant attorney general.

MARSHALL, J. It is an essential element of the crime of rape that the outrage be accomplished by force and against the will of the female. If she consents at all, however reluctantly or tardily, without reference to the resistance that precedes it, that operates in the eye of the law to reduce the offense to fornication or adultery, according to circumstances. The ingredient of the crime that gives to it its most heinous character, is that violation of the will by which the unlawful act is accomplished, not only in spite of the female's

power of resistance, exerted to her utmost ability under the circumstances, but without her consent.   The power of re-sistance need not necessarily be overcome by superior phys-ical force; if overcome by fraud or fear of serious personal injury, or if physical resistance becomes so useless as to war-rant it ceasing upon that ground, there being no consent or submission in the sense of mental operation, the essential of the accomplishment of the act by force and against the will of the outraged party is fully satisfied.   The law as thus laid down is too well understood and has been too frequently ap-plied in this court to require discussion or call for any cita-tion of authority.   *Whittaker v. State*, 50 Wis. 518.

In the light of the foregoing it is said for the plaintiff in error that the evidence was not sufficient to justify the ver-dict of the jury finding him guilty of the crime of rape, and, as we view the case on the record, that presents the only question necessary for consideration.

The age of the girl was not such, considering the fact that in all but years she appears to have been a fully developed woman, as to warrant any very strong inferences in favor of the prosecution because of tender years.

She admitted that *Bohlmann* was a stranger to her, yet, though she had a girl friend for company, she voluntarily walked with him most of the way after leaving the dance, to the place where the alleged outrage was committed; that they walked arm in arm part of the time, and part of the time each with an arm around the other.   After Dora, the girl friend, arrived at her home, Alvina proceeded with *Bohlmann*, and notwithstanding the fact that he threw her down after going but a short distance and acted in a way to indicate very clearly his design, all of which she says she understood, she made no very serious efforts to escape from the danger, though she demonstrated her ability to do so, and there was a neighbor's house near by to which she could readily have resorted.   Taking her evidence as true, she was

Bohlmann vs. The State.

quite a match for *Bohlmann* at the first encounter, for she got away from him without injury, and proceeded toward her home.   After she so escaped she passed near the neighbor's house and on to the scene of the second encounter, without even making an effort to resort to such house for safety, or to raise any alarm because of her danger.   When the parties arrived within a distance of about a block from the house of Alvina's employer, the request was made that she go out on the grass plat near the road side fence.   It does not appear that she refused other than by stepping back and compelling him to pull her, as she said, along toward the desired spot.   She made no outcry; she did not use even a word of protest.   In reaching the grass plat it was necessary to pass down into a ditch and up a bank, yet that appears to have been all accomplished without delay or difficulty.   She testified that at that time she knew what he intended; that she stepped back but did not say anything; that he took hold of her and pulled her.   He made no threats or said anything to put her in fear of personal injury other than that to be apprehended from such intended purpose.

During all the time till the grass plat was reached, and she was thrown upon the ground, and her clothes near her person removed, she exhibited none of those symptoms of alarm, or intense mental anguish, or physical resistance that would be reasonably expected of a woman under such circumstances in order to protect herself from a most grievous impending outrage.   Up to the time she was on the ground, her clothes raised, and those near her person removed, though her hands were loose and nothing had yet been said to intimidate her, she does not appear to have done anything or said anything worth mentioning by way of protest or resistance, other than she kicked with her feet.   She says the reason why she did not resist was, she was afraid *Bohlmann* would kill her, but it does not appear that he made any

Bohlmann vs. The State.

threat, or said anything to put her in fear of personal injury till his act had proceeded well on to its accomplishment; then he used the words, "If you do not keep still you will know what I will do to you." From first to last there does . not appear to have been any resistance worthy of mention as such. There was no mark of violence upon Alvina's person, her underclothing was not torn, and after the encounter was over she proceeded on her way a few steps to the residence of her employer, and there retired for the balance of the night without making known the injury done to her, yet it was so recent that, upon the theory that it was rape, she had had no time to recover from the effect of the terrible outrage upon her mind. Applying that reason and common sense which men of mature years ordinarily possess to the circumstances as above related, one is almost persuaded to the idea that the rule that a person cannot be properly convicted of crime unless the facts constituting guilt are established by evidence beyond a reasonable doubt was displaced by the jury in this case, notwithstanding very full instructions by the learned trial judge on the subject, by the theory that there should be a conviction unless innocence were established beyond a reasonable doubt. All the reasonable inferences from the circumstances established by the evidence, taking the testimony of the girl as true, are rather against the theory that she resisted to the extent of her power so to do, and against the theory that she made any resistance at all, worthy to be called such.

Further discussion of the evidence will serve no valuable purpose. Failure of the girl to protest against going out of the road upon the grass plat, under the circumstances, other than by stepping back, and to offer any resistance other than such as was easily overcome, so that she walked to the desired place, and failure to use her hands to prevent, or voice to protest against, the arrangement of her clothing for the intended purpose, and failure to exhibit any of those symp-

toms of intense mental anguish and alarm naturally to be expected of a woman when in imminent danger of having committed upon her that greatest of outrages that can be perpetrated upon one of her sex, if not strongly indicative of consent with some measure of reluctance, certainly are so inconsistent with that resistance to the best of her ability and accomplishment of the outrage against her will, necessary to make out the crime of rape, that the jury were not warranted in saying that guilt was established by the evidence beyond a reasonable doubt.

*By the Court.*— The judgment of the circuit court is reversed, the cause remanded for a new trial, the warden of the state prison directed to deliver the accused, *Otto Bohlmann*, into the custody of the sheriff of Jefferson county, and he is directed to keep him subject to further proceedings according to law.