Loescher, Plaintiff in error, vs. The State, Defendant in error.

*February 25—March 15, 1910.*

*Rape: Resistance: Threats: Examination of witnesses: Leading questions: Discretion.*

1. To constitute rape the act must be committed by force and against the will of the female; but where she is rendered insensible through fright, or ceases resistance under fear of death or great bodily harm, the consummated act is rape.
2. A conviction of rape is sustained in this case upon evidence which is *held* sufficient to warrant the jury in finding that the

prosecutrix ceased to resist because her will was overcome by threats of great bodily harm.    WINSLOW, C. J., and MARSHALL, J., dissent.

3. The allowance of leading questions is a matter largely in the discretion of the trial court.   Such questions being necessary in this case in order to get at the facts, their allowance was not an abuse of discretion.

ERROR to review a judgment of the circuit court for Kenosha county: A. C. BRAZEE, Judge.   *Affirmed.*

*Calvin Stewart,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *Robert Verne Baker,* district attorney, and oral argument by *Mr. Baker.*

KERWIN, J.   The plaintiff in error, hereinafter called the defendant, was convicted of the crime of rape upon a seventeen-year-old girl, sentenced to imprisonment for the term of ten years, and brings error.   The main question before us for consideration is whether the evidence is sufficient to support the verdict of guilty.   The contention of counsel for defendant is that the state failed to prove nonconsent or loss of volition and submission by reason of loss of volition.

The evidence produced tends to show that on the day in question, February 13, 1909, shortly after 7 o'clock in the evening, the prosecutrix left her home in the city of Kenosha, Wisconsin, to go to a party at the home of one Becker. She called at a house on the way for a girl friend, whom she did not find, and proceeded on her way to the party, stopping at a store to get a box of candy, where she remained about ten minutes, and then continued on her journey.   She met defendant, whom she did not know.   After she had walked a block she heard defendant running after her, and when he came up to her he took hold of her and spoke to her.   She did not answer.   He walked about two doors with her until they were about in front of the Becker house where she was going.   She screamed and he put his hand over her mouth.

She bit his hand.   He then grabbed her by the throat, drew her through an alley near the Becker house, until they came to a washline, which she took hold of and to which she clung. Defendant told her to let go the washline or he would run his knife into her side, and, as he said this, pressed something against her side.   Defendant then drew prosecutrix across two lots, against her will, to a chicken coop, and threw her upon the ground, where water had collected from melting snow.   She was frightened; tried to get up.   He grabbed her by the throat and tried to strangle her.   She got up and tried to get away.   He grabbed her again and threw her down, and sat or kneeled upon her legs; put his coat under her head, took off her clothes, and, by renewal of the threats that he would run a knife into her, made her loosen her elastics, then pulled down her drawers, and had sexual intercourse with her against her will.   She was paralyzed with fear.   Just before the sexual intercourse, without stating in detail the vulgar language used, defendant said in effect that he did not want to commit murder, but did want to accomplish his purpose.   After the act he said he might get ten years for this, but that he would take the train for Chicago that night and be in New York the next day.   After the act was committed prosecutrix helped defendant, at his request, to put on his coat, and said she would say nothing about it, because she wanted to get away from defendant and through fear of refusing to comply with his request to that effect.   She immediately after the act, and as soon as she could get away from defendant, hastened to the Becker house, pushed in the door, was in a state of great excitement, crying and sobbing, her clothes wet from the water where she had been thrown down, her hair down and disarranged, her face and eyes very red, appeared greatly exhausted, and said she had been assaulted by a man and told what had happened. She lay on the couch in the Becker house for a long time with her hands over her face, and appeared to be in great distress.

When defendant came home at about 8 o'clock in the evening he was intoxicated. Defendant was a stranger to prosecutrix, she not having seen him to her knowledge before the time of the assault. Defendant was thirty years old, and prior to the assault upon prosecutrix had been twice convicted of burglary.

We shall not attempt to detail the evidence at any great length. The foregoing, however, gives a fair idea of the salient points proved and upon which the case turns. Defendant admitted having sexual intercourse with the prosecutrix, but denied the force and threats. In other respects the story of the prosecutrix was substantially undisputed by the defendant. While there is considerable evidence to the effect that the defendant exercised force from the time he first assaulted the prosecutrix until he accomplished his purpose, it is at least very doubtful whether the evidence of force was sufficient to support the verdict in the absence of evidence of the threats and fear induced by such threats. In order to constitute the crime of rape the evidence must show that the act was committed by force and against the will of the female; but where the female is rendered insensible through fright, or ceases resistance under fear of death or great bodily harm, the consummated act is rape. 1 Wharton, Crim. Law (10th ed.) § 557; *Sharp v. State,* 15 Tex. App. 171; *State v. Ruth,* 21 Kan. 583; 2 Bishop, Crim. Law, §§ 1120, 1122; *Brown v. State,* 127 Wis. 193, 199, 106 N. W. 536; *State v. Reid,* 39 Minn. 277, 39 N. W. 796; *State v. Cunningham,* 100 Mo. 382, 12 S. W. 376; *Wright v. State,* 4 Humph. (Tenn.) 194; *State v. Shields,* 45 Conn. 256; *Rahke v. State,* 168 Ind. 615, 81 N. E. 584. As said in 2 Bishop, Crim. Law, § 1125:

"A consent from fear of personal violence is void; and though a man lays no hands on a woman, yet if by an array of physical force he so overpowers her that she dares not resist, his carnal intercourse with her is rape."

This court has often recognized the rule that where the
will of the woman is overcome by threats of great personal
injury there is no consent.  *Brown v. State,* 127 Wis. 193,
199, 106 N. .W. 536; *Croghan v. State,* 22 Wis. 444; *Bohl-
mann v. State,* 98 Wis. 617, 621, 74 N. W. 343; *Whittaker
v. State,* 50 Wis. 518, 7 N. W. 431.  In the last-cited case
the conviction was reversed upon error in the charge, and in
considering the subject of consent the court said:

"This is not a case where the prosecutrix was overcome by
threats of personal violence, and paralyzed and rendered
helpless and passive by fear, so that her volition could not be
exercised either for or against the act of sexual connection."

And in *Bohlmann v. State, supra,* the court said:

"The power of resistance need not necessarily be over-
come by superior physical force.  If overcome by fraud or
fear of serious personal injury, or if physical resistance be-
comes so useless as to warrant it ceasing upon that ground,
there being no consent or submission in the sense of mental
operation, the essential of the accomplishment of the act by
force and against the will of the outraged party is fully satis-
fied.  The law as thus laid down is too well understood and
has been too frequently applied in this court to require dis-
cussion or call for any citation of authority."

Counsel for defendant relies upon *Brown v. State,* 127
Wis. 193, 106 N. W. 536, and *State v. Cowing,* 99 Minn.
123, 108 N. W. 851, 9 Am. & Eng. Ann. Cases, 566.  But
the legal doctrine laid down in these cases is not out of
harmony with what has been heretofore said in this opinion.
In the *Brown Case* it did not appear that the female was
overcome by fear or became paralyzed by threats and intimi-
dation, and the evidence on the question of resistance was
weak and insufficient to carry the case to the jury.  The case
was very different in its facts from the one now before us.
The same may be said of other cases in this court in which
convictions have been set aside for insufficiency of evidence,
notably *Bohlmann v. State, supra,* and *O'Boyle v. State,* 100

.Wis. 296, 75 N. W. 989, 991, where the relation of the parties with each other, and the character of the evidence, were such as to render evidence of resistance incredible. In the *O'Boyle Case* there was no corroboration, and the court said (p. 300):

"Where the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime."

In *State v. Cowing, supra,* the court reviewed the cases at great length on the question of the resistance necessary to be proved in order to constitute the crime of rape, and found that the evidence was insufficient, and, further, that there was no evidence of threats or intimidation on the part of the defendant or any intent on his part to use any means necessary to accomplish his purpose, nor any reasonable grounds for apprehension of bodily harm.

The inferences to be drawn from the evidence in the case before us are strongly against the defendant. It is unlike cases in this and other courts where the relations of the parties were such as to render a claim of nonresistance at least in some degree plausible or perhaps credible. The defendant and prosecutrix in this case were strangers. They had never associated together. That prosecutrix should consent to the sexual intercourse under the circumstances detailed in the evidence seems most improbable and unnatural. Besides, there is much corroborative evidence here that prosecutrix did not consent. True, there is evidence which would indicate that she did not resist to the extent of her ability, and if it were not for the evidence of threats of bodily harm it would be difficult, if not impossible, to sustain the conviction. But the attack upon this young girl by defendant was a brutal one and well calculated to terrify her and paralyze her with fright. We have referred to the substance of the evidence regarding the threats and need not repeat it in detail. Seiz-

ing the prosecutrix by the throat, attempting to strangle her, threatening to put his knife into her side if she resisted, accompanied by a movement indicating a purpose to do so, renewing these threats just before the act was consummated, and stating that he did not want to commit murder but did want to accomplish his purpose, in connection with other facts and circumstances in the case, were sufficient to warrant the jury in finding that the prosecutrix was prevented from further resisting through fright occasioned by the threats and that she never consented to the intercourse.   As we have seen, failure to resist to the utmost of the female's ability through fear of death or great bodily harm is no defense in a prosecution for rape.   No complaint is made here that the jury was not properly instructed upon the law, and therefore we must assume, in the absence of anything appearing in the record to the contrary, that the jury found that the will of the prosecutrix was so overcome by threats of great bodily harm as to deter her from further resistance.

In 3 Russell on Crimes (6th ed.) p. 225, it is said: "The offense of rape may be committed, though the woman at last yielded to the violence, if such her consent was forced by fear of death or by duress."   In *Wright v. State,* 4 Humph. (Tenn.) 194, it was held that consent through fear was no defense to prosecution for rape.   In *State v. Ruth,* 21 Kan. 583, 589, it was ruled:

"That if a person by threats, or by placing a female in fear of death, violence, or bodily harm, induces her to submit to his desires, and while under this influence ravishes her, this is as much a forcible ravishing as if a person, by reason of his superior strength, would hold a woman and forcibly ravish her."

To the same effect is *McQuirk v. State,* 84 Ala. 435, 4 South. 775, 5 Am. St. Rep. 381; *State v. Cunningham,* 100 Mo. 382, 12 S. W. 376; *State v. Shields,* 45 Conn. 256; *Rahke v. State,* 168 Ind. 615, 81 N. E. 584; *Bailey v.*

*Comm.* 82 Va. 107; *Ransbottom v. State,* 144 Ind. 250, 43 N. E. 218; *Sharp v. State,* 15 Tex. App. 171. In the case last cited there was practically no resistance. It appearing, however, that the female submitted through **fear,** a conviction was sustained.

The court below and the jury saw defendant in this case as well as prosecutrix, heard their evidence, and were in a much better position to judge of the weight and credibility of the evidence than this court. The court is of opinion that the question of defendant's guilt was for the jury. *Williams v. State,* 61 Wis. 281, 21 N. W. 56; *Schuster v. State,* 80 Wis. 107, 49 N. W. 30.

The point is made by counsel for the defendant that the court erred in its rulings on evidence, and that error was also committed by reason of remarks by the trial judge in the presence of the jury. The principal complaint of counsel is that the questions of the prosecuting attorney were leading. It is apparent, however, from the record that it was necessary in order to get at the facts to permit leading questions, and the trial court obviously recognized that. Whether or not leading questions should be allowed rests largely in the discretion of the trial court. *Barton v. Kane,* 17 Wis. 37, 42; *Porath v. State,* 90 Wis. 527, 537, 63 N. W. 1061; *Bannen v. State,* 115 Wis. 317, 91 N. W. 107, 965; *Brown v. State,* 127 Wis. 193, 206, 106 N. W. 536.

The court is of the opinion that no prejudicial error was committed on the trial below, and that the judgment should be affirmed.

*By the Court.*—Judgment is affirmed.

WINSLOW, C. J. (*dissenting*). I am unable to bring my mind to the conclusion that the evidence justifies a conviction for rape. In my judgment the admissions of the complaining witness as to her failure to resist as well as to her active assistance in the very act make a legal conviction for rape

impossible within the rules laid down in *O'Boyle v. State,* 100 Wis. 296, 75 N. W. 989; *Brown v. State,* 127 Wis. 193, 106 N. W. 536. To my mind the statement that she was "paralyzed with fear" is absolutely disproven by her own admissions as to what she did and what she omitted to do. It seems to me that hereafter all that will be necessary to turn fornication into rape will be for the complaining witness to testify that she was paralyzed with fear, no matter how incredible the physical facts may make that statement appear.

Marshall, J. (*dissenting*). I concur in the emphatic dissent by the chief justice from the decision in this case.

In explanation of my position it must be said that I do not understand the record as the court seems to have. It was not thought necessary in the court's opinion to state evidence in detail, only generalities, in the main, from conclusions of the prosecutrix, which this court has frequently declared are not entitled to any weight. *Bohlmann v. State,* 98 Wis. 617, 74 N. W. 343; *O'Boyle v. State,* 100 Wis. 296, 75 N. W. 989; *Devoy v. State,* 122 Wis. 148, 99 N. W. 455; *Brown v. State,* 127 Wis. 193, 106 N. W. 536. In the last case cited the court, as to the requisite character of evidence to establish the vital facts of resistance and nonconsent, said:

"It is settled in this state that no mere general statements of the prosecutrix, involving her conclusions, that she did her utmost and the like, will suffice to establish this essential fact, but she must relate the very acts done in order that the jury and the court may judge whether they were omitted."

Here the girl testified, over and over again, that she was "terrorized." She endeavored to excuse herself for failing to do any of the acts which a woman would be naturally expected to do under the circumstances to prevent her ravishment, upon the pretext that she was "terrorized." When the accused was walking her down to the chicken coop, passing by the doors and windows of several occupied houses, she

made no outcry or resistance worthy the name upon the pre-
text that she was "terrorized." She was a fully and rather
overdeveloped woman, physically and otherwise. She was
seventeen years old and weighed about 125 pounds. She was
a working girl and would, naturally, under inspiration of
supreme aversion to enforced ravishment, have been quite a
match in strength for the accused. From first to last she was
not injured physically in the slightest degree, nor were her
clothes torn, nor was any violence used in respect to them.
She was not sufficiently outraged in mind but that she had
more care for saving her glasses than of protecting her virtue.
She did not lose the glasses or her hat, nor was either broken
or injured. He was not injured in any way. Not a mark
was left upon the body or clothing of either, indicating at-
tack or resistance. From just such circumstances as those,
on evidence quite as strong as any in this case, the court con-
demned the verdict in *Brown v. State, supra,* and held that
there was only proof of fornication with some degree of re-
luctance, that, however, not continuing to the end. A like
situation is, to my mind, plainly portrayed here. The ac-
cused had no weapon. He made no move indicating a pur-
pose to obtain one or use one. All the evidence of the prose-
cutrix as to his saying that he threatened to put a knife into,
and she felt some hard substance against, her side when she
was walking down to the chicken coop seems to be almost, if
not quite, nonsensical. At that very time according to her
own story, he had both arms around her and had been walking
along with her in that attitude substantially from the instant
that he fell into her company. After arrival at the chicken
coop she said she could not recollect that she did anything.
She said he threw her down and she got up and was free
from him, he being flat on his back. There seems to be no
reason at all why she did not then flee, if she really wished to
escape. Her excuse for not doing so appears to me almost
silly. She seems really to have given the accused, by coyly

lingering within his reach, opportunity to take hold of her and pull her down with him again. Then, according to her own story, she did not kick or bite or strike or do any of the things which it was suggested in *Brown v. State* and other cases in this court are natural concomitants of genuine resistance to ravishment. He removed in part, the clothing which was in his way. She informed him, when he met with some difficulty, how to overcome it, and completed the disrobement of her person herself. Her mental attitude did not change from that time on to the close of the encounter other than to more plainly indicate consent, if not even desire. Several times she testified that she was "terrorized," but that, obviously, was not entitled to any weight. She testified that though physically unimpaired and in the fulness of her strength, for aught of its having been exhausted by physical resistance, from the time actual contact commenced till the affair was over, she did not do anything. She would not even testify but that her limbs were disposed favorably. The condition is well indicated by this testimony: "Did you kiss him then? *A.* I don't know. *Q.* You don't remember? *A.* No. If I did I was unconscious of it." What does that indicate if not consent? After the encounter was over and she was free from the accused, did she flee? No. She, as the evidence would indicate, deliberately rearranged her clothing and assisted him at his request to put on his overcoat. Circumstances again, which in *Brown v. State, supra,* were said to repel the idea of rape. Then she walked along towards her destination, accompanied by the accused and exchanged promises with him not to tell of what had occurred. True, she said she did so because she was afraid. Again indulging in her preposterous conclusions, which though repelled by the evidence, seem to have been taken by the jury to outweigh it. When she arrived at her destination there is little, if anything, in what occurred, so far as her testimony goes, indicating that she had just been forcibly rav-

ished.   She went into the house and told a Mrs. Becker that
she had been "held up," explaining what she meant, and
then, according to her own story, lay down on the couch and
waited for her clothes to dry before going home.   She did not
testify to anything indicating that she was "terrorized."
She did not even say she cried before or after arriving at her
destination or spoke in any way in the manner of that su-
preme indignation which a woman would naturally evince
immediately upon having been dealt with as charged.

All that repels the idea of rape.   True, the woman who
met the girl when she arrived at her destination, testified that
she cried, and that the witness spent her time endeavoring to
soothe her till after she left the house to go home.   That
story, in view of the girl's, seems quite as unworthy of belief,
as is the latter's that she was "terrorized," while she was as-
sisting the accused to conveniently get to her person, and
assisting him to put on his overcoat after the affair was over
and while they were walking away together and exchanging
promises not to tell.   True, the statement in the court's opin-
ion would indicate some basis for the verdict, but the diffi-
culty is, general conclusions of the prosecutrix are dignified
as evidence, contrary to, as said in the *Brown Case,* "the
settled law of this state" in this class of cases.   Take out of
the case such general conclusions and look at just what the
witness said occurred and there appears, as the chief justice
indicated, a pretty clear case of fornication without sufficient
resistance at any time to indicate that any power other than
the female's own moral weakness under the influence of sug-
gestion persisted in by the accused, was necessary to accom-
plish her consent.

The offense of rape is a terrible crime.   There is about as
much difference between it and that of fornication as there is
between assault and battery and murder.   Indignation toward
low male characters who take advantage of the moral weak-
ness of such of the opposite sex as they may choose as prob-

able submitting victims, must not result in breaking down, or making at all uncertain, the boundary line between fornication and rape.    No court in the land has made that boundary more distinct than this, repudiating the loose expressions made by some courts and text-writers and in one or two early decisions here.    *Whittaker v. State,* 50 Wis. 518, 7 N. W. 431.    There the court emphatically repudiated the theory that there can be consent under any circumstance and the crime be rape, and declared that consent, regardless of circumstances, does away with the element of "against her will" and renders that fornication which otherwise might be rape.    It seems that the marked distinction, pointed out in the *Whittaker Case,* between submission through inability to longer resist because of physical exhaustion or fear, while still continuing to mentally resist, may not be appreciated in the future.    The court condemned using the word "consent" so as to indicate that it can ever exist in a case of rape, explaining that while there can be submission without consent there cannot be consent without submission.    The use of authorities now from jurisdictions where that distinction has not been clearly recognized, may break the force of the studied attempt to not only recognize it here but to eliminate from previous decisions anything out of harmony therewith. "Any consent of the woman," said the court, "however reluctant, is fatal to a conviction.    There must be the utmost reluctance and resistance."    Again, "if the carnal knowledge was with the voluntary consent of the woman no matter how tardily given, or how much force had theretofore been employed, it is no rape."    The court further said, in effect, that mere technical nonconsent is not sufficient to satisfy the essentials of rape.    There must be actual nonconsent of mind and body.    There must be actual resistance by every means within the power of the female, under the circumstances, not at first only, but to the very end, or the case, at the worst, is only fornication aggravated by circumstances to

be taken into consideration in fixing punishment; that the crime of rape cannot be committed with the consent of the woman no matter how obtained, though there may be sub-mission in the sense of not resisting through physical and mental disability to resist, and the crime be rape.

The dominant difficulty here is that there is hardly a circumstance as to the conduct of the two participants in the affair during or after the encounter to indicate a struggle of adversaries for the mastery.    Absence of such after circumstances, alone, has been held to be fatal to conviction, notably in *Bohlmann v. State,* 98 Wis. 617, 74 N. W. 343; *O'Boyle v. State,* 100 Wis. 296, 75 N. W. 989; *Devoy v. State,* 122 Wis. 148, 99 N. W. 455.    In the latter case the circuit court sent the case to the jury, mainly, as here, on general declarations of the prosecutrix, which, on appeal, were said to be of no probative force whatever.