Conners vs. The State.

*By the Court.* — The judgment of the county court is reversed, and a new trial ordered.

CONNERS VS. THE STATE.

CRIMINAL LAW. *Errors in omitting to instruct.*

1. In a prosecution for rape, it was not error, against the accused, to omit to instruct the jury, in the general charge, that if they did not find him guilty of rape, they might find him guilty of assault with intent to commit that crime.

2. The court below did not caution the jury that prejudice was liable to be aroused against the accused because of the heinous nature of the crime alleged; nor call their attention to the difficulty of defending against such an accusation; nor press upon their attention the rule that voluntary submission by the woman while she has power to resist, however reluctantly yielded, deprives the act of an essential element of rape; nor instruct them that proof of the good reputation of the accused as a peaceable and law-abiding citizen (there being such proof in the case) was entitled to some weight in his favor, especially if there were circumstances proved on the trial upon which a doubt of his guilt might be based. The court also refused instructions asked by the accused, containing some inaccuracies, but which aimed to state the foregoing propositions. *Held,* in view of the evidence at the trial, that such neglect to charge was error.

ERROR to the Circuit Court for *Outagamie* County.

*J. V. Quarles,* for plaintiff in error.

For the state, there was a brief by the *Attorney General,* and oral argument by *H. W. Chynoweth,* Assistant Attorney General.

LYON, J. The plaintiff in error, *John Conners,* was tried, at the last March term of the circuit court for Racine county, upon an information charging that he had committed the crime of rape upon the person of one Caroline Ortell, on the 25th of February, 1879. The trial resulted in a verdict of

guilty, and the court sentenced him to imprisonment in the state prison for the term of ten years.

The prosecutrix testified that in the evening of that day, at about half past eight o'clock, *Conners* came to the house where she was at work in the city of Racine, with a horse and cutter, and, under the false pretense that her brother was sick and dying, induced her to leave with him for her father's house, one or two miles distant, to see her brother.   She also testified that before reaching her father's, *Conners* turned the horse from the road leading there, into another road; that he drove into a ditch, causing the cutter to upset, and dragged her a short distance to a telegraph pole, where, by force and against her will, he had carnal knowledge of her person, and that as soon as she was released she ran home crying, and told her father of the outrage which *Conners* had committed upon her.   She also testified that she was under sixteen years of age, and that no man had ever before had sexual intercourse with her.

*Conners* was arrested for the offense during the same night. The next morning the person of the prosecutrix was examined by two physicians, by direction of the district attorney, and a short time afterwards she was examined by two other physicians, but at whose instance does not appear.

It is not denied that *Conners* stated to the prosecutrix and her mistress, when he went for the former, that her brother was sick; or that the horse went for a short distance on the wrong road and turned off the track towards the fence, near where the crime is alleged to have been committed; or that the prosecutrix walked to her father's house from that point. The testimony tends strongly to show that the prosecutrix did not reach her father's house for two hours after she left her place of service with *Conners*.

The plaintiff in error testifies that he went for the prosecutrix at her own request, and that she previously suggested to him to make the false pretense of her brother's sickness in

order to obtain the consent of her mistress that she might go with him; that the horse he was driving was vicious and balky, and turned upon the wrong road and out of the track against his will; that the cutter did not upset, but the prosecutrix remained in it for some time while he was out of the cutter trying to induce the horse to go, and then, the weather being cold and they being only a short distance from her father's, she concluded to walk there, and did so; and that he did not ravish her or have sexual intercourse with her, or offer or propose to do anything of the kind.

The evidence tends very strongly to show that *Conners* and the prosecutrix must have been together at least an hour at the place where she claims to have been ravished. Snow or sleet was falling, the wind was quite high, and the weather was very cold. Witnesses who went to the place the next morning testified they saw the tracks of the cutter where it turned out of the road and passed over a snow-drift, but could discover no indications in the snow that a cutter had turned over there, or of a struggle at or near where the prosecutrix claims she was ravished. Her father testified that he saw indications that something had been dragged there, and that persons had lain there in the snow. No other witness so testifies. Some of the witnesses say the snow had drifted some during the night. There were several occupied houses in the vicinity of the place — one of them very near it.

It is a significant fact that none of the physicians who examined the prosecutrix were called by the state as witnesses. They were, however, all called by the defense, and all testified that they were unable to find a bruise upon the person of the prosecutrix, or any irritation of her sexual organs. Neither did they find any blood stains upon her clothing, or any evidence whatever indicating recent sexual intercourse, much less evidence indicating that she had been so recently ravished. Some of the physicians say, however, that it would have been possible, in their opinion, for a man of ordinary parts to have

had connection with her. One of them, known to some members of this court to be a gentleman of great experience and eminence in his profession, testified that he was unable to insert his finger in her parts without inflicting pain.

The defense proposed to show by Dr. Martin that he had examined the plaintiff in error, and that he was a man of more than ordinary parts. An objection to the admission of the testimony was sustained by the court.

The prosecutrix testified that she was wearing tight or closed drawers at the time, and that *Conners* tore out a button-hole in getting them down. There is no pretense in the evidence that her clothing was otherwise torn or injured.

The foregoing statement of facts would gladly have been omitted, but the same is absolutely essential to an understanding of the significance of the instructions prayed on behalf of the plaintiff in error, but which the court refused to give.

At the close of the charge, counsel for the plaintiff in error excepted to it because the court failed to instruct the jury that, in case they did not find the accused guilty of rape, they might find him guilty of an assault with intent to commit that crime. Such an instruction would have been entirely correct, but it is not very apparent how the accused could have been prejudiced by the failure to give it. It seems probable that he might, in certain contingencies, have been better off without the instruction. Had the jury only found an assault with intent to ravish, they might, in the absence of the proposed instruction, have returned a verdict of not guilty. Not so had the instruction been given. A conviction for the felonious assault would necessarily have followed.

The learned circuit judge refused to give the following instructions prayed on behalf of the plaintiff in error:

" 1. The charge made against the defendant is, in its nature, a most heinous one, and well calculated to create strong prejudice against the accused; and it has been well said by an

eminent judge, Lord HALE, that rape is an accusation easily made, hard to be proven, and harder still to be defended against, though the accused be ever so innocent.  So you, the jury, must carefully consider all the evidence in the case, and the law given you by the court, in making up your verdict.  You must find on the part of the woman not merely a passive policy, or an equivocal submission to the defendant; such resistance will not do.  You must find that the woman exercised the utmost resistance in her power, and submitted, if at all, with the utmost reluctance to the defendant.  A mere half-way struggle is not enough; and unless you do find, beyond a reasonable doubt, that the woman did offer the utmost resistance in her power, and submitted to the defendant with the utmost reluctance, your verdict will be, not guilty.

" 2. If the woman resist, but finally consent, no offense is committed.

" 3. The evidence introduced by the defendant of good reputation is evidence to be considered by the jury in favor of the defendant."

The charge given by the learned circuit judge to the jury contains a correct statement of the law of the case, as far as it goes, but it does not contain the substance of the rejected instructions.  It fails to caution the jury that prejudice was liable to be aroused against the accused because of the heinous nature of the crime charged in the information, or to call their attention to the difficulty, growing out of the nature and usual incidents of the crime, of defending against an accusation of rape.  It did not press upon their attention the principle or rule that voluntary submission by the woman, while she has power to resist, no matter how reluctantly yielded, removes from the act an essential element of the crime of rape.  The jury were not expressly told that if the carnal knowledge was with the voluntary consent of the woman, no matter how tardily given, or how much force had been theretofore employed, it is no rape.  And lastly, the jury were not instructed

that proof of the good reputation of the accused as a peaceable and law-abiding citizen (and such proof was given on the trial) was entitled to some weight in his favor, especially if there were circumstances proved on the trial upon which a doubt of his guilt might be predicated.

The proposed instructions are not very accurately drawn, but they aim to state the above propositions, all of which are well established rules of law.

The evidence above stated showing, or tending to show, the length of time *Conners* and the prosecutrix were together, the absence of indications in the snow of a struggle, the absence of bruises upon her person or irritation of her sexual organs recently after the alleged rape, the conformation of those organs, the slight disarrangement of her clothing, and the previous good reputation of the accused, tend to cast a doubt upon the truth of the positive testimony of the prosecutrix that *Conners* ravished her. Because the evidence left room for such doubt, the propositions of law sought to be embodied in the rejected instructions should have been given, to aid the jury in solving the doubt, if any existed, to aid them in determining whether there was a reasonable doubt of the guilt of the accused. It was the duty of the judge to correct any inaccuracies in the instructions proposed, and to give them as corrected. *State v. Wilner*, 40 Wis., 304.

We are also inclined to think that the testimony of Dr. Martin should have been received.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Racine county, who will hold him in custody until he shall be discharged, or his custody changed by due course of law.