BROWN, Plaintiff in error, vs. THE STATE, Defendant in
error.

*January 13—January 30, 1906.*

*Criminal law and practice: Rape: Elements of offense: Resistance:*
*Evidence: Weight and sufficiency: New trial: Court and jury:*
*Coercion of verdict: Information: Omission of the word "felo-*
*niously:" Mental condition: Appeal and error: Admission:* Res·
*gestæ: Request for instructions: Immaterial error: Exceptions.*

1. Subject to the exception where the power of resistance is over-
come by unconsciousness, threats, or exhaustion, in order to
constitute the crime of rape not only must there be entire ab-
sence of mental consent or assent, but there must be the most
vehement exercise of every physical means and faculty within
the woman's power to resist the penetration of her person, and
this must be shown to persist until the offense is consummated.

2. In a prosecution for rape no mere general statement of the prose-
cutrix, involving her conclusion that she did her utmost and
the like, will suffice to establish such requisite fact of resistance,
but she must relate the very acts done, in order that the jury
and the court may judge whether any were omitted.

3. While the crime of rape can be established by the uncorroborated
testimony of the sufferer, without such corroboration her tes-
timony must be most clear and convincing.

4. In a prosecution for the crime of rape the evidence, stated in
the opinion, is *held* to present no proof of such resistance as

is essential to that crime, and that a new trial should have been granted on that ground.

5. A verdict cannot stand where the jury have been subjected to any statements or directions naturally tending to coerce or threaten them to agreement either way, or to any agreement at all, unless it be clearly shown that no influence was thereby exerted.

6. Under the facts, stated in the opinion, an officer's warning to the jury that they would be locked up for the night unless they agreed very soon, is *held* both threatening and coercive, and as naturally tending to induce the jurymen to surrender their opinions.

7. Where, in an information charging the crime of rape, the offense denounced by sec. 4381, Stats. 1898, is otherwise set forth with such degree of certainty that the court can pronounce judgment according to the right of the case, the absence of the word "feloniously," or its equivalent, if a defect, is in mere matter of form not tending to the prejudice of the defendant, does not affect his substantial rights, and the information is *held* sufficient.

8. Where a mere mental condition is material, the person whose intent is material should be allowed to testify directly to the existence or nonexistence of such mental state.

9. Such evidence, however, is to be weighed with due regard to the ease of the statement and the difficulty of refutation.

10. In a prosecution for the crime of rape it is proper, on the direct examination of the prosecutrix, to ask her if the act of defendant "was against her will," if thereby is intended mere inquiry into her mental state of willingness or unwillingness.

11. In a prosecution for the crime of rape a physician, called by the defendant, was asked whether at the time of a physical examination of the prosecutrix she stated to the witness that she had made no resistance or fight, and it was *held* proper to refuse to permit the question to be answered:

   (1) For the reason that the witness had already been allowed to answer the same question.

   (2) The prosecutrix was not a party so as to render her admissions competent evidence.

   (3) The only way in which such a statement could be made admissible would be either, first, by laying a foundation for its reception as impeaching evidence; or secondly, by the state first giving evidence of parts of the same transaction whereby the defendant might be entitled to prove the remainder.

   (4) Such statements, while *res gestæ* to the physical examination, were not admissible as *res gestæ* of the offense itself.

12. Where the court, in its general charge, gave correctly an abstract rule of law, and there must be a reversal on other grounds, it is not necessary to decide whether the charge sufficiently met specific instructions asked.

13. In the absence of exceptions there cannot be reversal for alleged errors.

ERROR to review a judgment of the circuit court for La Fáyette county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Writ of error to review conviction for rape and ten years' sentence to the state reformatory. The information alleged that "on the 27th day of October, in the year 1904, at said county, *Grant Brown* did ravish and carnally know one Edna Nethery, a female of the age of fourteen years and more, by force and against her will and against the peace and dignity of the state of Wisconsin." The two parties were children of neighboring farmers who had known each other all their lives. The accused was twenty years old, the prosecutrix sixteen. Within the year before the event they had been thrown to some extent in company at social gatherings, at one of which at least had occurred direct personal contact in some games described as involving "kissing forfeits." On October 29th the prosecutrix went by a usual path across fields to her grandmother's house for the purpose of having an aunt try on certain clothing being made for her. Such path passed by and over parts of the farm of defendant's father. Defendant was in the field driving out hogs and repairing a fence, and, as prosecutrix reached a stile, he was close thereto, so engaged. She addressed him in a playful way with reference to his work, and he suspended the same and came up to her. Her story is that he at once seized her, tripped her to the ground, placed himself in front and over her, unbuttoned her underclothing, then his own clothing, and had intercourse with her; that the only thing she said was to request him to let her go,

and, throughout the description of the event, her only state-
ment with reference to her own conduct was, repeatedly:

"I tried as hard as I could to get away. I was trying all
the time to get away just as hard as I could. I was trying to
get up; I pulled at the grass; I screamed as hard as I could,
and he told me to shut up, and I didn't, and then he held his
hand on my mouth until I was almost strangled."

Also that at one time she got hold of the fence to try to pull
herself away. Whenever he removed his hand from her
mouth she repeated her screams. She denies any recollection
as to the position of her limbs at any of these times, or where
his were with reference to herself. She confined her state-
ment of the force used by him to the actual sexual penetration.
She makes no mention of any use of her hands or her lower
limbs. After the completion of the intercourse she says he
made her promise not to tell, and, upon her doing so, allowed
her to arise. She says she made the promise because she was
afraid of him, and did not know what he would do if she did
not. Thereupon she proceeded to her grandmother's house,
something more than a quarter of a mile, but, before entering
the house, went into a shed, slightly off her direct course, to
arrange her underclothing. There she discovered flow of
blood, and, as she states, became frightened and rushed into
the house to her aunt, where she at once exclaimed, "Grant
Brown has [done something] to me. O! What shall I do?"
Whereupon the aunt immediately took her home and informed
her mother. She was taken to the family physician for exami-
nation, who, however, postponed it until the next day, when,
in company with another physician, a physical examination
was made, disclosing fresh rupture of the hymen and a condi-
tion of the genital parts indicating recent sexual intercourse,
but not significant as to whether the same had been accom-
plished forcibly or otherwise. Her person nowhere showed
any bruises or injuries, nor did her clothing, except for a rip
about an inch long in her drawers. At this examination she

stated to one of the physicians that she had not resisted or made any fight. The defendant's story differed only in some details and in the denial of any resistance, asserting that when she came where he was at work and addressed certain playful remarks to him he approached her, placed his arm about her and indulged in certain liberties with her person, to which she offered no resistance, whereupon he laid her down and had intercourse with her, she at no time making any resistance or outcry. There were no marks upon his face, hands, or clothing of any struggle. Accused was a well-matured girl for her years, weighing 117 pounds. About a week before the event she had been ill with measles for four or five days, and made some suggestion that she had not fully recovered her strength on October 29th. Defendant's physical characteristics are shown only to the extent that he weighed 150 pounds, and had been brought up on a farm doing farm work.

After verdict of guilty a motion to set aside the verdict and for a new trial was made, for insufficiency of evidence, and also upon the ground, among others, of improper influence upon the jury. Affidavits of two of the jurymen were presented, showing that the jury retired about 5:30 p. m., at 7 o'clock were taken to a hotel for supper, and, after supper, several of them contributed $2 for the purchase of a box of cigars, the smoking of which in the jury room immediately commenced. That room was eighteen by fifteen feet, and the air became very foul. These two jurors, who at that time were the only ones remaining opposed to conviction, were not users of tobacco and were made seriously ill, had to leave the room for a time, and afterwards suffered seriously from such illness, although their fellow jurymen had suspended smoking in deference to their condition. That about 10:30 the officer in charge informed the jury "that the judge of the court was about to go to his hotel for the night, and that the jury, as a consequence, would be locked up for the night unless they very soon agreed upon a verdict." The jurymen supposed, of

course, that such incarceration would be in the room where they then were, although the judge had instructed the officer to clear out the courtroom and allow them to use that, but had given no directions that such fact be communicated to the jury. The affidavits proceed to state that, induced by this statement and in apprehension of serious illness if they were not able to escape from the vitiated atmosphere and have rest, these jurors announced their willingness to agree upon a verdict of guilty, although they still believed the defendant innocent, and after a short time such a verdict was agreed to, returned into court, and assented to upon polling of the jury. There were filed affidavits of the other jurors minimizing in some degree the apparent illness and suffering of these two jurors, and asserting that at first, when they offered to vote for conviction with the statement that they did so contrary to their opinions and merely to escape, their ballots were refused, but afterwards received. The judge also filed a statement upon the record exculpating himself from knowledge of the illness of these jurors. The fact of the communication by the officer was not denied, nor the illness, in some degree, of these two jurors as a result of the polluted atmosphere of the jury room. The motion for a new trial being overruled, and sentence pronounced, the defendant sued out this writ of error to review the same.

For the plaintiff in error there was a brief by *Orton & Osborn* and *E. F. Conley,* and oral argument by *P. A. Orton.*

For the defendant in error there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and oral argument by *Mr. Titus.*

DODGE, J. 1. As the statement of facts discloses, the only mooted question was that of prosecutrix's physical resistance to the act of intercourse, and, as to this, counsel for plaintiff in error urges, with great force, that there was not evidence sufficient to satisfy any reasonable mind, beyond reasonable

doubt, of such resistance as the law makes *sine qua non* to the crime of rape. We need not reiterate those considerations of the ease of assertion of the forcible accomplishment of the sexual act, with impossibility of defense save by direct denial, or of the proneness of the woman, when she finds the fact of her disgrace discovered or likely of discovery, to minimize her fault by asserting *vis major,* which have led courts, and none more strenuously than this, to hold to a very strict rule of proof in such cases. *Conners v. State,* 47 Wis. 523, 2 N. W. 1143; *Whittaker v. State,* 50 Wis. 518, 7 N. W. 431; *Bohlmann v. State,* 98 Wis. 617, 74 N. W. 343; *O'Boyle v. State,* 100 Wis. 296, 75 N. W. 989; *Devoy v. State,* 122 Wis. 148, 99 N. W. 455. Not only must there be entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist the penetration of her person, and this must be shown to persist until the offense is consummated. We need not mention the exception where the power of resistance is overcome by unconsciousness, threats, or exhaustion, for, in this case, there is no proof of any of those things. Further, it is settled in this state that no mere general statements of the prosecutrix, involving her conclusions, that she did her utmost and the like, will suffice to establish this essential fact, but she must relate the very acts done, in order that the jury and the court may judge whether any were omitted. *Bohlmann v. State, supra; Devoy v. State, supra.* Turning to the testimony of prosecutrix, we find it limited to the general statement, often repeated, that she tried as hard as she could to get away. Except for one demand, when first seized, to "let me go," and inarticulate screams, she mentions no verbal protests. While we would reasonably recognize the limitations resting on many people in attempting expression and description, we cannot conceive it possible that one whose mind and exertions had, during an encounter of this sort, been set on resistance, could or would in narrative mention

nothing but escape or withdrawal. A woman's means of protection are not limited to that, but she is equipped to interpose most effective obstacles by means of hands and limbs and pelvic muscles. Indeed, medical writers insist that these obstacles are practically insuperable in absence of more than the usual relative disproportion of age and strength between man and woman, though no such impossibility is recognized as a rule of law. 3 Wharton & S. Med. Jur. §§ 172, 188, and authorities cited; 1 Beck, Med. Jur. 203. In addition to the interposition of such obstacles is the ability and tendency of reprisal, of counter physical attack. It is hardly within the range of reason that a man should come out of so desperate an encounter as the determined normal woman would make necessary, without signs thereof upon his face, hands, or clothing. Yet this prosecutrix, of at least fair intelligence, education, and ability of expression, in her narrative mentions no single act of resistance or reprisal. It is inconceivable that such efforts should have been forgotten if they were made, or should fail of prominence in her narrative. The distinction between escape and resistance is admirably discussed by RYAN, C. J., in *State v. Welch,* 37 Wis. 196, 201. Resistance is opposing force to force (Bouvier), not retreating from force. These illustrations but serve to point the radical difference between the mental conception of resistance and escape and emphasize the improbability that if the former existed only the latter would have been mentioned. This court does not hold, with some, that, as matter of law, rape cannot be established by the uncorroborated testimony of the sufferer, but, in common with all courts, recognizes that, without such corroboration, her testimony must be most clear and convincing. Among the corroborating circumstances almost universally present in cases of actual rape are the signs and marks of the struggle upon the clothing and persons of the participants, and the complaint by the sufferer at the earliest opportunity. In the present case the former is absolutely

wanting, for the one-inch rip in prosecutrix's underwear was not shown to be of a character or location significant of force or violence. Not a bruise or scratch on either was proved, and none existed on prosecutrix, for she was carefully examined by physicians. Her outer clothing not only presented no tearing, but no disarray, so far as the testimony goes. When one pauses to reflect upon the terrific resistance which the determined woman should make, such a situation is well-nigh incredible. The significance of the other corroborative circumstance, that of immediate disclosure, is much weakened in this case by the fact that prosecutrix turned from her way to friends and succor to arrange her underclothing and there discovered a condition making silence impossible. Such facts cannot but suggest a doubt whether her encounter would ever have been disclosed had not the discovery of blood aroused her fear that she was injured and must seek medical aid, or at least that she could not conceal from her family what had taken place. Nor is this thoughtfulness of the disarrangement of her clothing consistent with the outraged woman's terror-stricken flight to friends to give the alarm and seek aid which is to be expected. We are convinced that there was no evidence of the resistance which is essential to the crime of rape, and that the motion for new trial should have been granted on that ground.

2. Was there improper influence exerted upon the jury? The rule has become fully settled in Wisconsin that a verdict cannot stand when the jury have been subjected to any statements or directions naturally tending to coerce or threaten them to agreement either way, or to agreement at all, unless it be clearly shown that no influence was thereby exerted. *Roman v. State,* 41 Wis. 312; *McBean v. State,* 83 Wis. 206, 53 N. W. 497; *Hodges v. O'Brien,* 113 Wis. 97, 88 N. W. 901; *Secor v. State,* 118 Wis. 621, 637, 95 N. W. 942; *Koch v. State,* 126 Wis. 470, 106 N. W. 531. It has been said that reasonable ground to suspect such influence suffices. *Roman*

*v. State, supra.* Presumption of prejudicial effect arises in absence of clear proof to the contrary. *Keenan v. State,* 8 Wis. 132; *State v. Dolling,* 37 Wis. 396; *Peppercorn v. Black River Falls,* 89 Wis. 38, 41, 61 N. W. 79; *Hempton v. State,* 111 Wis. 127, 147, 86 N. W. 596. It is even stronger in case of improper statements by an officer than if by the trial judge. *Hempton v. State,* 111 Wis. 127, 149, 86 N. W. 596. Whether testimony of jurors as to their own mental processes, either in support or denial of the effect of statements or conduct, can be received at all, may well be doubted (*Hempton v. State, supra; Wolfgram v. Schoepke,* 123 Wis. 19, 24, 100 N. W. 1054; *Woodward v. Leavitt,* 107 Mass. 453, 466), but is not important here, for there is none offered to negative effect upon some of the jurors, and the direct evidence of the two jurors as to their mental processes or reasons may be disregarded in view of the presumptions above stated. Such affidavits were admissible to prove the physical conditions and the statement of the officer. *McBean v. State,* 83 Wis. 206, 210, 53 N. W. 497; *Hempton v. State, supra; Woodward v. Leavitt, supra.* In view of the conditions under which the jurymen were suffering, it is unquestionable that the officer's warning that they would be locked up for the night unless they agreed very soon was both threatening and coercive, and naturally tended to induce surrender of their opinions. While jurymen, in performance of the high civic function entrusted to them, ought to adhere to their deliberate and conscientious convictions notwithstanding personal inconvenience or suffering, it is not the policy of the law that rights of litigants, especially those charged with crime, shall be made dependent on the existence of such Spartan devotion to duty. We cannot avoid the conclusion that the verdict before us was fully proved to have been rendered under such threats and coercion that it should have been set aside.

3. The information was assailed, both before plea and after verdict, because of omission of the word "feloniously"

or some equivalent therefor. A mass of authority, ancient
and modern, from which many decisions and text-writers are
cited, support this assault, and declare the necessity of the
adverb "feloniously" to a good charge of rape. There are
exceptions, for citation of which, also, we are mainly in-
debted to the industry and fairness of counsel for plaintiff in
error. Some of these rest directly upon statutes authorizing
the omission of the very word itself; others on more general
statutes, and still others upon the disappearance, in America,.
of the ancient common-law distinctions between felonies and
misdemeanors and results of convictions of either. *Comm.
v. Scannel,* 11 Cush. 547, 548; *People v. Olivera,* 7 Cal. 403;.
*People v. Garcia,* 25 Cal. 531; *Bruguier v. U. S.* 1 Dak. 5,.
46 N. W. 502; *Jane v. Comm.* 3 Met. (Ky.) 18; *State v..
Felch,* 58 N. H. 1; *State v. Tourjee,* 26 R. I. 234, 58 Atl..
767; Whart. Cr. Pl. & Pr. (9th ed.) § 260. At the common
law criminal pleading became burdened with numerous tech-
nicalities and refinements, some of them founded upon prac-
tical and cogent reasons then existing, others upon grounds.
almost fanciful. In the same spirit with their Civil Codes.
most states have, by statutes, swept away many of these re-
quirements in the interest of simplicity and directness.
Hardly anywhere have such legislative attempts been accorded
more comprehensive effect by courts than in Wisconsin. Some
of our statutes on the subject are the following: Sec. 4650,
Stats. 1898, requiring an offense to be charged "in plain,.
concise language, without prolixity or unnecessary repeti-
tion;" sec. 4658, Stats. 1898, declaring information sufficient
"if it can be understood therefrom that the offense charged is:
set forth with such degree of certainty that the court may
pronounce judgment upon a conviction according to the right
of the case;" sec. 4659, Stats. 1898, providing that no infor-
mation shall be vitiated by omission of " 'with force and arms''
or any word of similar import, . . . or by reason of any other
defect or imperfection in matters of form which shall not

tend to the prejudice of the defendant;" sec. 4669, Stats.
1898, directing that, after verdict, an information shall suf-
fice which defines a statutory offense in the words of the
statute or in words of substantially the same meaning; and
finally, sec. 2829, Stats. 1898, applicable alike to civil and
criminal proceedings (*Cornell v. State,* 104 Wis. 527, 80 N.
W. 745), commanding: "The court shall, in every stage of an
action, disregard any error or defect in the pleadings or pro-
ceedings which shall not affect the substantial rights of the
adverse party; and no judgment shall be reversed or affected
by reason of such error or defect." The policy of liberality
evinced by these statutes was declared in the apt words of
MARSHALL, J., in *State ex rel. Durner v. Huegin,* 110 Wis.
189, 232, 85 N. W. 1046. Under them, omissions of such
elements as "against the peace and dignity of the state" or
"against the statutes in such case made" or "unlawfully" have
been held immaterial. *Nichols v. State,* 35 Wis. 308, 312;
*Hintz v. State,* 58 Wis. 493, 17 N. W. 639; *Murphy v. State,*
108 Wis. 111, 115, 83 N. W. 1112; *State ex rel. Durner v.
Huegin, supra; Hanley v. State,* 125 Wis. 396, 104 N. W.
57. Sufficiency of a description of the offense in the words
of the statute wherever the statute so individuates the offense
that the offender has proper notice, from the mere adoption
of the statutory terms, what offense he is held for, both be-
fore and after verdict, has been repeatedly decided, approving
Whart. Cr. Pl. & Pr. (8th ed.) § 220; *Bonneville v. State,* 53
Wis. 680, 686, 11 N. W. 427; *Steuer v. State,* 59 Wis. 472,
18 N. W. 433; *State v. Mueller,* 85 Wis. 203, 55 N. W. 165;
*Fischer v. State,* 101 Wis. 23, 76 N. W. 594. Other in-
stances of the application of above cited statutes are *State v.
Boncher,* 59 Wis. 477, 481, 18 N. W. 335; *Sires v. State,* 73
Wis. 251, 255, 41 N. W. 81. The question whether the acts
constituting an offense of which the elements are fully defined
and the punishment is prescribed by statute is a felony or
misdemeanor is no longer a very material one. All the results

are the same in either event, namely, those denounced by the statute. Forfeiture of estate or benefit of clergy no longer follows one holding or the other. See *State v. Felch, supra.* Doubtless it is essential now, as of old, that the information or indictment must, without intendment, declare all the elements essential to the crime, and with so much of description and certainty as to fully inform the accused of the specific acts claimed to constitute the crime and the crime which they, are claimed to constitute. *Bates v. State,* 124 Wis. 612; *Steuer v. State, supra.* If it do this, however, the statutes above mentioned certainly declare its sufficiency. In the present information we find it charged that the defendant did exactly that to which the law affixes the punishment. It could not fail to inform him and the court what acts were alleged to be criminal nor what crime was charged; neither could there be any doubt that conviction or acquittal would fully protect him against further prosecution for that crime. What, then, could be added by alleging such acts to have been done feloniously? The purpose of such assertion, originally, was to show upon the record that the prisoner was not entitled to benefit of clergy (Whart. Cr. Pl. & Pr. § 260), or perhaps that forfeiture of estate must result (*Wilson v. State,* 1 Wis. 184, 188) ; but no such purpose could be served at the present time. It is suggested that the word in question might supply, some other qualification, express allegation of which is lacking, such as criminal intent, where acts might be criminal or innocent according to the intent or the element of force and against will; but we discover nothing omitted from the present information needing to be supplied. The statute makes no requirement of specific criminal intent other than necessarily inheres in ravishment by force and against the will of the sufferer, and all of that is expressly alleged. No other element of the crime occurs to us which could be added to the word "feloniously" and none is suggested. We are convinced that its absence does not affect the substantial rights of defendant,

·and that, without it, the offense denounced by sec. 4381, Stats.
1898, is set forth with such degree of certainty that the court
·could pronounce judgment according to the right of the case,
and that the defect, if such it be, is in mere matter of form
not tending to the prejudice of the defendant. So that, under
·our statute, the information is sufficient without this word,
however essential at common law or under other and different
·systems of criminal procedure.

4. Error is assigned upon the overruling of an objection to
·the question to the prosecutrix: "Was it against your will?"
In this we think there was no error. Where a mere mental
·condition is material, the person whose intent is material is
·usually, if not universally, allowed to testify directly to the
·existence or nonexistence of such mental state; such evidence,
·of course, to be weighed with due regard to the ease of the
·statement and the difficulty of refutation. *Fischer v. State,*
101 Wis. 23, 26, 76 N. W. 594; *Milwaukee R. M. Co. v.
Hamacek,* 115 Wis. 422, 91 N. W. 1010. Such question to
·the prosecutrix could properly mean no more than to inquire
as to her mental state of willingness or unwillingness. Of
·course it would be improper by such a question to attempt to
call for the conclusion of the witness as to whether the offense
·was against her will in the statutory sense that it was accom-
plished only by overcoming the utmost physical resistance of
which she was capable; and, even if so understood by the jury,
her mere conclusion upon such subject could not justify con-
·viction unless confirmed by full proof of the acts constituting
·such resistance, as has already been pointed out in discussing
·the sufficiency of the evidence in this case.

5. Error is also assigned upon refusing to permit a phy-
·sician called by the defendant to testify that the prosecutrix,
at the time of her physical examination, stated to the witness
·that she made no resistance or fight. In such ruling there was
·no error: first, for the reason that the witness had already
been allowed to answer the same question; but, as the subject

may be of importance upon another trial, we deem it proper to say that, independently of this reason, the ruling was correct. The prosecutrix was not a party so as to render her admissions competent evidence, and the only way in which such a statement of hers could be made admissible would be either, first, by laying a foundation for its reception as impeaching evidence; or, secondly, by the state first giving evidence of parts of the same transaction whereby the defendant might be entitled to prove the remainder. *State v. Shettleworth,* 18 Minn. 208, 215; *State v. Yocum,* 117 Mo. 622, 23 S. W. 765; *State v. Sudduth,* 52 S. C. 488, 490, 30 S. E. 408. We are clear, however, that the mere proof by the state of the fact of physical examination, without detailing any of the conversation, would not so open the door, except possibly for the purpose of narrating statements or conduct strictly *res gestæ* to the examination, such as expressions of present pain or bodily or mental condition. The subject inquired of by the rejected question related to nothing of the sort, but to past events. Of course such narrative on the following day could not be admissible as *res gestæ* of the offense itself.

6. Error is assigned upon refusal of a requested instruction to the effect that mere verbal protests and refusals would not suffice as resistance; and that, unless the jury found active physical resistance by prosecutrix, their verdict must be not guilty. Both of these propositions of law were correct, and, in a case of so much doubt, should have been impressed upon the jury clearly and unambiguously. The court, in its general charge, gave a correct abstract rule of law as to the necessity of both nonconsent and resistance, and, since there must be reversal on other grounds, we shall not deem necessary to decide whether such charge sufficiently met the request of defendant's counsel.

Complaint is made that, in his general charge, the court authorized conviction without full and continued resistance, if such resistance were overcome by fear. It is urged that,

while the rule of law is correct in a proper case, it tended here to mislead the jury by suggesting that they might find such situation and excuse in the facts of this case, whereas there was no evidence whatever of any threats or other facts to justify such finding. The argument might be of much force had exception been reserved to this portion of the charge, but, in absence of such exception, there can be no reversal on this ground.

Other assignments present nothing likely to arise upon a new trial and may be passed without discussion.

*By the Court.*—Judgment and sentence reversed, and cause remanded for a new trial.