IN RE JOHNSON: STATE DEPARTMENT OF PUBLIC WELFARE
and another, Appellants, v. JOHNSON, Respondent.

*December 2, 1959—January 5, 1960.*

68

For the appellants the cause was argued by *Albert O. Harriman,* assistant attorney general, with whom on the brief were *John W. Reynolds,* attorney general, and *Jack Steinhilber,* district attorney of Winnebago county.

For the respondent there was a brief by *Barnard & Allen* of Oshkosh, and oral argument by *David H. Allen.*

FAIRCHILD, J. 1. *Appealability of the order of the circuit court.* The first question is whether the matter is properly before this court. The respondent mother contends that the State and County Departments of Public Welfare are not given the right to appeal from an order of the circuit court entered upon appeal from an order of the juvenile court. Respondent's argument seems to be grounded upon a claim that these public agencies could not have appealed to the circuit court from an adverse order of the juvenile court. Prior to the enactment of the Children's Code in 1955, sec. 48.07 (8), Stats., expressly authorized an appeal from an order of the juvenile court terminating parental rights, but there was no provision for appeal from a refusal

to terminate. This court decided that the statute, in that form, did not give a public agency the right to appeal from an order of the juvenile court dismissing its petition for termination of parental rights. *In re Fish* (1945), 246 Wis. 474, 17 N. W. (2d) 558.

In the Children's Code, however, the provision for appeal reads, in part, as follows:

"[Section] 48.47. Any person aggrieved by an adjudication of the juvenile court and directly affected thereby has the right to appeal to the circuit court of the same county within forty days of the entry of the order in the manner in which appeals are taken from judgments in civil actions. . . . The appeal shall be on the record which the juvenile court shall make and keep of the entire proceedings."

The Children's Code, enacted by ch. 575, Laws of 1955, resulted from recommendations of the child welfare committee of the legislative council, embodied in Bill No. 444, S. The first sentence above quoted from sec. 48.47, Stats., differs from the bill only in that the bill had called for an appeal directly to the supreme court rather than to the circuit court of the same county. A note to this section, printed as part of Bill No. 444, S., when it was before the legislature, stated, in part:

"Another important change is that it allows an appeal by a welfare agency which files a petition in a case since the agency would come within the class of those aggrieved by the adjudication and directly affected thereby. This overrules *In re Fish* (1944), 246 Wis. 474, 17 N. W. (2d) 558."

Respondent's basic premise is, therefore, in error; the county department could have appealed to the circuit court had the juvenile court dismissed its petition.

The appeal now before us, moreover, is an appeal from the final order entered in the appeal proceeding in circuit court, and not from the order of the juvenile court. While the right to appeal from the order of the juvenile court is

undoubtedly controlled by sec. 48.47, Stats., the order entered in the circuit court is appealable under sec. 274.09 which provides that: "Appeals to the supreme court may be taken from the circuit courts unless expressly denied . . ." and that:

"Said right of appeal applies to final orders and judgments rendered upon appeals from or reviews of the proceedings of tribunals, boards, and commissions, and to final judgments and orders whether rendered in actions or in special proceedings without regard to whether the action or proceeding involves new or old rights, remedies, or proceedings and whether or not the right to appeal is given by the statute which creates the right, remedy, or proceeding."

Sec. 274.33 (2), Stats., lists as appealable "a final order affecting a substantial right made in special proceedings, without regard to whether the proceedings involved new or old rights, remedies, or proceedings and whether or not the right to appeal is given by the statute which created the right, remedy, or proceedings, . . ." The appeal is properly before us.

2. *Termination of parental rights as to Cheryl Ann.* The statute under which the juvenile court entered its order was sec. 48.40, Stats. Sub. (2) authorizes the court to terminate all rights of parents to a minor without the parents' consent if it finds that one or more specified conditions exist. As to the father, the juvenile court grounded its order upon par. (a), abandonment. Par. (d) specifies one of the other conditions where termination is authorized.

"(d) That the parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be likely to be detrimental to the health, morals, or well-being of the minor. This paragraph applies only to cases where the legal custody of the minor has been transferred by order of a court of competent jurisdiction to a person other than the parents at least one year previous

and the minor has not been returned to the legal custody of the parents within that period."

It is quite apparent that in terminating the mother's rights, the court grounded its action on par. (d) of sec. 48.40 (2), Stats. Because of the last sentence of par. (d), however, par. (d) could not be grounds for the termination of parental rights to Cheryl Ann; one year had not elapsed since transfer of legal custody to the County Department of Public Welfare.

The attorney general argues here that the order of the juvenile court can be sustained as to the mother upon the grounds set forth in par. (b) of sec. 48.40 (2), Stats. Par. (b) reads:

"That the parents have substantially and continuously or repeatedly refused to give the minor necessary parental care and protection."

We cannot agree with this position. The juvenile court did not expressly find that the mother *refused* to give necessary care and protection to Cheryl Ann, or the others. Even though it is apparent that Cheryl Ann did not receive all the care she required, we think that in this context the legislature's choice of the word *refused* must be given significance. While the terms "refusal" and "neglect," with respect to the performance of obligations seem not always to be treated as distinguishable, distinct meaning must be given to them here, particularly because the legislature chose to use the word "neglect" in the paragraph immediately following. Par. (c) of sec. 48.40 (2), Stats., reads:

"That, although the parents are financially able, they have substantially and continuously neglected to provide the minor with necessary subsistence, education, or other care necessary for his health, morals, or well-being or have neglected to pay for such subsistence, education, or other care when legal custody is lodged with others."

The legislature apparently intended to require an element of repeated wilful or deliberate omission before parental rights could be terminated under par. (b) of sec. 48.40 (2), Stats. Where the failure to give proper care is not so much a deliberate refusal as a natural consequence of the bad habits listed in par. (d), the legislature has required that the parents have a one-year period of warning or probation after the children's legal custody has been transferred to others.

The juvenile court made no finding of the mother's repeated refusal to provide care, but directed its findings almost solely to the grounds set forth in par. (d) of sec. 48.40 (2), Stats., as far as the mother was concerned. We do not think the evidence would sustain a finding of deliberate refusal by the mother to provide necessary care and protection except to the extent that failure to give care as a result of the mother's habitual use of intoxicating liquor might be considered deliberate. As to Cheryl Ann, therefore, the order of the circuit court reversing the order of the juvenile court terminating the parental rights of Joanne Johnson must be affirmed.

3. *The scope of review upon appeal to circuit court.* The decision of the circuit court contains no statement that the findings of the juvenile court were against the great weight and clear preponderance of the evidence, nor that the juvenile court had abused its discretion in deciding upon termination of the rights of the mother. In substance, the circuit court reviewed and evaluated the facts shown by the record, pointed out certain circumstances with reference to the mother's conduct which the circuit court deemed mitigating, and concluded that the mother's rights ought not to be terminated. Thus we reach the question as to the four older children of the extent of the authority the legislature intended to give to the circuit court to review the record and

come to an independent conclusion as to the ultimate disposition.

It was clear, prior to the enactment of the Children's Code, that upon appeal to the circuit court from an order of the juvenile court terminating parental rights, there was to be a new trial. Sec. 48.07 (8), Stats. 1953, provided in part:

"In the case of an appeal to the circuit court the appellant shall have a new trial which shall be without a jury unless a jury is demanded and if a jury is demanded the justice court practice in civil actions shall govern in the selection of the jurors."

In sec. 48.47, Stats., as enacted in 1955, the provision for new trial was omitted. If any question remained as to the character of the proceedings upon appeal, the legislature removed it by ch. 374, Laws of 1957, when it added to sec. 48.47 the following: "The appeal shall be on the record which the juvenile court shall make and keep of the entire proceedings."

Ordinarily, in Wisconsin, an appellate court does not have the power to decide questions of fact as an original proposition upon its review of the record.

"In a trial to the court findings of fact will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence." (Citing cases.) *Swazee v. Lee* (1951), 259 Wis. 136, 137, 47 N. W. (2d) 733.

It has been held that upon appeal from the civil court to the circuit court for Milwaukee county, the findings have the same status as findings of the circuit court have upon appeal to the supreme court.

"The findings of that court have the same status upon appeal to the circuit court as findings of the circuit court on appeal to this court. They are not entitled to the same con-

clusiveness as a verdict of a jury, but will control unless against the clear preponderance of the evidence." (Citing cases.) *Foster v. Bauer* (1921), 173 Wis. 231, 234, 180 N. W. 817.

For a recent example of a review by this court of the circuit court's review of findings of the civil court, see *Kamuchey v. Trzesniewski* (1959), 8 Wis. (2d) 94, 98 N. W. (2d) 403.

This limitation upon the scope of review must rest, in part at least, upon a recognition that the trier of the fact who saw and heard the witnesses is in a better position to determine credibility and weight of evidence than a court which merely reads the transcript of the testimony.

For related reasons, it is the general rule that where discretion is conferred upon a trial court, the appellate court is not to reverse the trial court unless the record demonstrates that there has been an abuse of discretion. *Mueller v. Michels* (1924), 184 Wis. 324, 341, 197 N. W. 201, 199 N. W. 380. The appellate court is not authorized to substitute its discretion for that of the trial court. As we read secs. 48.40 to 48.43, Stats., prescribing the grounds and procedure for termination of parental rights, it is noted that while specific grounds for termination are spelled out, the power to order termination is permissive in form. The legislature intended that the juvenile court, after having found that one or more grounds for termination exist in a particular case, is, nevertheless, to consider all the circumstances and exercise its sound discretion as to whether termination would promote the best interests of the children. See sec. 48.01. The legislature did not, however, confer upon the circuit court, in exercising its appellate jurisdiction over the juvenile court, the power to substitute its own discretion.

Thus the question presented to us upon appeal from the circuit court remains the same as that which was before the circuit court, namely, whether the findings were against

the great weight and clear preponderance of the evidence, and whether the juvenile court abused its discretion.

4. *The findings.* We have reviewed the record, and are satisfied that the findings of the juvenile court as to the mother's unfitness by reason of habitual use of intoxicating liquor are not against the great weight and clear preponderance of the evidence. Such facts are grounds for termination of parental rights under par. (d) of sec. 48.40 (2), Stats.

It may be that the finding as to Mrs. Johnson's lewd and lascivious conduct is not sustained by the evidence. Mrs. Johnson admitted misconduct to the extent of regular sexual intercourse with her divorced husband, although Mr. Johnson denied this and claimed he had seen other men leaving her home at night. She attributed her second pregnancy to a man named Williams. She claimed she admitted Williams to her home, thinking he was Johnson, and that Williams then raped her. Williams testified that he had visited her on three occasions, refused to answer whether he had sexual relations with her, but testified he did not forcibly assault her. Evidently the circuit court was of the opinion that Mrs. Johnson's claims were more credible, although the juvenile court appears not to have believed her. Credibility and weight of testimony were matters for the trial court. Lewd and lascivious behavior, however, includes an element of openness of the improper acts or associations. Sec. 944.20, Stats.; *State v. Brooks* (1934), 215 Wis. 134, 137, 254 N. W. 374. The misconduct established by the testimony may not have constituted lewd and lascivious conduct as found by the juvenile court, but assuming that it did not, it could properly be considered by the juvenile court along with all the other circumstances in the exercise of the court's discretion.

5. *Did the juvenile court abuse its discretion?* It is apparent from the decision of the circuit court that as an orig-

inal proposition, the circuit court would not terminate the mother's rights because it deemed termination too drastic action in the light of all the circumstances. The juvenile court evidently felt that a good future for these children is far more probable if they are made available for adoption, and that termination of parental rights is necessary to that end. The mother had, of course, lost legal custody of the four older children more than a year previously. They had been returned to her immediate care upon a trial basis, under supervision, and she had failed to provide proper care because of her habits. While the power vested in the juvenile court is admittedly awesome in these circumstances, we cannot say that the juvenile court in this case abused the discretion conferred upon it.

*By the Court.*—The order of the circuit court, in so far as it reversed the order of the juvenile court terminating the parental rights of Joanne Johnson to Eugene, Michael, Ruth Lynn, and Duane Johnson, Jr., is reversed, and the cause is remanded with directions to affirm that portion of the order of the juvenile court. In all other respects, the order of the circuit court is affirmed.

MARTIN, C. J., took no part.