STATE, Appellant, v. WATERS, Respondent.
SAME, Appellant, v. PLICHTA, Respondent.

*June 4—June 25, 1965.*

For the appellant the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Roger P. Murphy,* district attorney of Waukesha county.

For the respondents there was a brief and oral argument by *A. Warren Cahill* of Waukesha, for Dalwyn W. Waters, and by *Robert T. McGraw* of Waukesha, for Paul John Plichta.

WILKIE, J. Three issues are presented on this appeal:

1. In reversing the order of the county court, did the circuit court exceed the proper scope of review?

2. Did the evidence establish respondents' guilt beyond a reasonable doubt?

3. Did the trial court abuse its discretion in not ordering a new trial?

*Scope of Review Upon Appeal to Circuit Court.*

This appeal presents the court with its first opportunity to consider sec. 957.255, Stats., which became effective in 1962,[1] and which provides in part:

---

[1] Ch. 561, Laws of 1961.

"(2) If a new trial is denied an appeal may be taken therefrom to the circuit court within 15 days of the date of such denial, and said circuit court may review the order refusing a new trial and if reversed and the crime involved is a felony then the circuit court may order a new trial to be had in said circuit court, . . ."

The decision of the circuit court neither declares that the evidence was insufficient to prove respondents' guilt beyond a reasonable doubt nor that the trial court abused its discretion in not granting a new trial. It appears from a reading of the decision that the circuit court reviewed the record and concluded, *de novo,* that "the facts are not as a matter of law sufficient to constitute the crime of rape." Relying on *In re Johnson* [2] the state contends that the circuit court erroneously reversed the trial court order denying new trials in that it improperly assumed a fact-finding function and improperly substituted its discretion for that of the trial court.

*Johnson* involved a construction of sec. 48.47, Stats., which permitted anyone aggrieved by an adjudication of the juvenile court to appeal to the circuit court of the same county. In concluding that the circuit court did not have the authority to review the record and come to an independent conclusion, this court said:

"Ordinarily, in Wisconsin, an appellate court does not have the power to decide questions of fact as an original proposition upon its review of the record.

" 'In a trial to the court findings of fact will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence.' (Citing cases.) *Swazee v. Lee* (1951), 259 Wis. 136, 137, 47 N. W. (2d) 733.

"It has been held that upon appeal from the civil court to the circuit court for Milwaukee county, the findings have the same status as findings of the circuit court have upon appeal to the supreme court.

[2] (1960), 9 Wis. (2d) 65, 100 N. W. (2d) 383.

" 'The findings of that court have the same status upon appeal to the circuit court as findings of the circuit court on appeal to this court. They are not entitled to the same conclusiveness as a verdict of a jury, but will control unless against the clear preponderance of the evidence.' (Citing cases.) *Foster v. Bauer* (1921), 173 Wis. 231, 234, 180 N. W. 817." [3]

By way of explanation the court stated:

"This limitation upon the scope of review must rest, in part at least, upon a recognition that the trier of the fact who saw and heard the witnesses is in a better position to determine credibility and weight of evidence than a court which merely reads the transcript of the testimony." [4]

Although the present case is a criminal matter, while *Johnson* was a civil case, the underlying rationale of *Johnson* in regard to scope of review should control if for no other reason than that the same problems of credibility exist.

In addition to incorrectly deciding the case as an original proposition based on a review of the trial record, the circuit court erred in ordering a new trial in the interests of justice. This is because under the provisions of sec. 957.255 (2), Stats., the circuit court does not have the authority, as does this court on review [5] or the trial court after the trial,[6] to order a new trial in the interests of justice. The authority in each instance is vested by precise statute and in the absence of express language in sec. 957.255 (2) authorizing the reviewing circuit court to order a new trial in the interests of justice, we find no such authority by implication. The trial court had refused to grant a new trial on that ground, and this was error only if there was an abuse of discretion.[7] As the court said in *In re Johnson:*

---

[3] Id. at page 74.

[4] Id. at page 75.

[5] Sec. 251.09, Stats.

[6] Sec. 270.49, Stats.

[7] *State v. Hibicke* (1953), 263 Wis. 213, 56 N. W. (2d) 818; *Kies v. Hopper* (1945), 247 Wis. 208, 19 N. W. (2d) 167.

". . . it is the general rule that where discretion is conferred upon a trial court, the appellate court is not to reverse the trial court unless the record demonstrates that there has been an abuse of discretion. *Mueller v. Michels* (1924), 184 Wis. 324, 341, 197 N. W. 201, 199 N. W. 380. The appellate court is not authorized to substitute its discretion for that of the trial court." [8]

Thus, as pointed out in *Johnson,* the questions properly before the circuit court should be the same as are before this court at the present time, *i.e.,* whether the evidence was sufficient to prove the defendants' guilt beyond a reasonable doubt and whether the trial court abused its discretion in not granting a new trial.[9]

## Sufficiency of Evidence.

On a criminal appeal, the conviction will not be upset if the " 'evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt.' " [10] The same rule applies when the court is the trier of fact.[11]

In Wisconsin, "[a]ny male who has sexual intercourse with a female he knows is not his wife, by force and against her will" is guilty of rape.[12] The phrase "by force and against her will" is defined by statute as meaning "either that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm." [13] Cases construing the "utmost resistance" require-

[8] *Supra,* footnote 2, at page 75.
[9] Also see *Madison v. Geier* (1965), 27 Wis. (2d) 687, 135 N. W. (2d) 761.
[10] *State v. Stevens* (1965), 26 Wis. (2d) 451, 463, 132 N. W. (2d) 502, and cases cited therein.
[11] *State v. Johnson* (1960), 11 Wis. (2d) 130, 104 N. W. (2d) 379.
[12] Sec. 944.01 (1), Stats.
[13] Sec. 944.01 (2), Stats.

ment have been well digested in *State v. Hoffman* [14] and a complete reiteration will serve no good purpose here. Suffice it to say that in general, resistance must persist until the act is consummated; [15] voluntary submission—no matter how reluctant—by a female who is still able to resist removes from the act an essential element of the crime. [16] However, it is recognized that the term "utmost resistance" is a relative rather than a positive term, [17] and what amounts to "utmost resistance" depends on the particular victim and the particular circumstances. [18] Application of the general rule and the caveat was explained as follows:

"The impression left by the *Brown Case* unquestionably is that, unless the woman is beaten into unconsciousness or put into a state of mortal fear by threats, she must make resistance approaching the superhuman in its ferocity and effectiveness before the crime of rape can be committed. In the *McLain Case* there was an endeavor to make it clear that while the utmost resistance was required in all cases, this requirement was relative, not positive, and that what constitutes the utmost resistance in a particular case must depend largely upon the facts of that case, such as the temperament of the victim, the relations of the parties, her state of health, her physical strength, her age, her experience, her courage, her nervous condition at the time, and perhaps other circumstances naturally affecting her powers of resistance. So reading the *McLain Case,* we do not think it can be said that there is any direct conflict between its doctrine and the doctrine of the *Brown Case,* but simply that it supplements the *Brown Case* and removes the erroneous idea which is likely to be gathered therefrom, namely, that the measure of re-

[14] (1938), 228 Wis. 235, 280 N. W. 357.

[15] *State v. Hoffman, supra,* footnote 14; *Brown v. State* (1906), 127 Wis. 193, 106 N. W. 536.

[16] See *State v. Hoffman, supra,* footnote 14; *Devoy v. State* (1904), 122 Wis. 148, 99 N. W. 455; *O'Boyle v. State* (1898), 100 Wis. 296, 75 N. W. 989; *Conners v. State* (1879), 47 Wis. 523, 2 N. W. 1143.

[17] *McLain v. State* (1914), 159 Wis. 204, 149 N. W. 771.

[18] *O'Boyle v. State, supra,* footnote 16.

sistance required is absolute and fixed in all cases and must be so great that, while it fails to defeat the purpose of the ravisher, the failure is only by the narrowest possible margin." [19]

The strict physical-resistance requirement is relaxed somewhat if it would be useless to resist.[20] In *Bohlmann v. State* it was held:

"The power of resistance need not necessarily be overcome by superior physical force; if overcome by fraud or fear of serious personal injury, or if physical resistance becomes so useless as to warrant it ceasing upon that ground, there being no consent or submission in the sense of mental operation, the essential of the accomplishment of the act by force and against the will of the outraged party is fully satisfied." [21]

The pertinent facts are these: On Saturday, June 20, 1964, L——— and S———, a friend who was staying with her while L———'s parents were out of town, went shopping in downtown Milwaukee. L——— was sixteen years old at the time. At approximately 6:30 p. m., the respondents Waters and Plichta met the girls and asked them whether they wanted a ride. L——— recognized respondent Waters, and the girls accepted. After driving around for a short time the respondents asked the girls if they would like to go to a party in Grant Park. L——— knew some of the people who were supposed to be there. The four ate at a restaurant and then picked up a third girl, C———. Around 8:30 the respondents dropped S——— off at L———'s home, bought a six-pack of beer and some grape juice, and drove to Grant Park. There the couples necked and drank for about two hours although L——— testified that she poured most of the two drinks she had out on the ground. They left Grant Park and drove around for awhile and took C——— home. The

---

[19] *B——— v. State* (1918), 166 Wis. 525, 533, 166 N. W. 32.

[20] *Purpero v. State* (1926), 190 Wis. 363, 208 N. W. 475; *Bohlmann v. State* (1898), 98 Wis. 617, 74 N. W. 343.

[21] *Bohlmann v. State, supra,* footnote 20, at page 620.

time was between 1 and 2:30 a. m. The respondents then told L——— that they wished to stop at another girl's house and began driving out of town. L——— asked to be taken home and Waters, who was driving, told her to "shut up." She was seated in the front seat between the respondents. Waters finally stopped the car on a country road in Waukesha county, some 30 to 40 miles from downtown Milwaukee.

After turning the motor and lights off, Waters asked L——— if she would like to play a game. To no avail, L——— again asked to be taken home. Plichta then inquired whether she had ever had intercourse before. L——— answered "No." L——— testified:

"Then they held me and they took down my Bermudas and ripped where my zipper was. They took them down to about my knees and my panties, and they were holding me and Del [Waters] put his finger inside of me and said something, 'No, I don't think she has,' and Paul [Plichta] said, 'Let me see,' and he put his finger inside of me. He said, 'Maybe and maybe not.' "

Each respondent took one of L———'s arms and straddled one of her legs with his. Her testimony continues:

"I was screaming and crying and Del [Waters] slapped me in the mouth and held his hand over my mouth. Then Del took down his slacks and shorts and took my hand and wanted me to touch his privates and I made a fist and I said, 'No,' and I pulled away and he didn't take my hand back. He let it go at that. Then we were arguing back and forth. I asked them why they were doing this to me, that I never did anything to them. They said they would let me go but they would take off all my clothes and I could go to someone's house if I wanted to do this. Del asked me if they had to knock me out. I said, 'Yes.' We were arguing back and forth about this. I wanted to go home and they said, 'No,' not until I gave them what they wanted. They took my Bermudas and panties down all the way off my one leg. Then Paul went in the back seat and Del pushed me down so I was

laying down in the seat. He laid on top of me and spread my legs apart with his legs and he had intercourse with me."

When Waters was finished, Plichta told her to get in the back seat. She pulled her panties and Bermudas up and was able to get out of the car after starting to go over the back seat. All of this occurred sometime between 3 and 3:45 a. m.

L——— ran three blocks to a farmhouse but could not arouse the occupants. She continued down the road for another half a block to a lighted farmhouse where she told Mr. L———, the occupant, that she "was left out here by a couple [of] boys" and asked to use the phone. Mr. L——— testified that she appeared "nervous" and "upset," and although her hair was mussed up, there was no other evidence of physical violence. Mrs. L——— either gave her a safety pin or a needle and thread to repair the torn zipper. L——— telephoned S——— and told her what had happened and then called her next-door neighbor. Sometime later the neighbor drove out to get L——— and they went to the police department in Milwaukee and reported what had happened. On Tuesday L——— was examined by the family doctor.

We cannot say that the evidence is insufficient as a matter of law to prove L———'s utmost resistance was overcome. L——— was a sixteen-year-old girl who was taken to a remote spot in the country in the early morning hours by two men. She was slapped and muzzled when she began to scream and cry. At one point, although L——— stated that they would have to knock her out to get what they wanted, combat with respondents was made impossible because the two men were holding her arms and legs and also because of the close confines of the front seat of the car. It is true that there is no evidence of any last-ditch resistance by L——— just before the act was completed. According to the evidence, she did not bite, scratch, kick, strike out against her assailants with either leg or arm, and she did not come out of the affair

with any telltale bruises or scratches. But under the circumstances, the trial court as the trier of fact, could reasonably have believed that at this juncture she was effectively intimidated or that any attempt to fight off Waters would have been futile because of Plichta's continued presence. It is also significant that she made her escape at the first available opportunity. Respondents contend that she would have been free to get away while Plichta was climbing into the back seat. But this position presupposes that respondent Waters released her at the same time, and this is not supported by the testimony. Also at this time she was not in a favorable position to flee because her shorts and panties were half on and half off. Taken as a whole, the evidence is sufficient for the trier of fact to determine beyond a reasonable doubt that L——— "used all the resistance in her power under the circumstances up to the time of the intercourse." [22]

In concluding that L——— did not resist to her utmost, the circuit court stated:

"This Court is not impressed by the 'tender age' of the victim. She was old enough to be picked up; she was old enough to willingly imbibe of intoxicating beverages; she was old enough to occupy a blanket with one of the defendants for several hours at Grant Park, and to neck with one of the defendants."

While we disapprove of her behavior we do not believe that such conduct is tantamount to consent to the acts of final gratification taken by the defendants on the country road in Waukesha county. One whose moral standards permit her to engage in the activities noted by the circuit court may nevertheless resist to the utmost when it comes to a forced act of intercourse.

Respondents argue that the fact that L——— did not tell the first people she met, Mr. and Mrs. L———, what had

[22] *O'Boyle v. State, supra,* footnote 16, at page 299.

happened to her emphasizes that she was not raped and that she gave her consent to the respondents' actions. It is reasonable to conclude, however, that she was reluctant to tell perfect strangers that she had been raped. It was only a matter of minutes after the attack that L——— told S——— by phone—the first person that she talked to whom she actually knew—exactly what had happened. And her neighbor took her to the police station to report the incident immediately after driving to Mr. L———'s to take her home. At any rate, this is largely a matter of credibility, and the trial court, who heard all the witnesses, did not consider her failure to confide in Mr. and Mrs. L——— to be unreasonable under the circumstances.

### Abuse of Discretion.

Respondents contend that the state's failure to call the doctor who examined L——— as a witness amounted to prejudicial error because his testimony would have a bearing on the questions of penetration and chastity of the complaining witness. Although respondents do not say so specifically, it is apparent that they feel that the trial court abused its discretion in not granting a new trial on this ground.

But corroborating testimony in regard to penetration is not required. As this court said in *Cleaveland v. State:* [23] " 'When one of understanding testifies to a completed act of sexual intercourse it is sufficient proof of penetration.' " And while the want of chastity, even though no defense to the charge of rape, is relevant in that it bears on the question of consent,[24] it cannot be said on the facts of the case that the failure to corroborate L———'s plea of virginity amounted to error so as to require a new trial on that ground.

*By the Court.*—Order reversed.

[23] (1933), 211 Wis. 565, 570, 248 N. W. 408.
[24] *Kaczmarzyk v. State* (1938), 228 Wis. 247, 280 N. W. 362.